Shaw, C. J.
This was an action of assumpsit, to recover the amount of a draft alleged to have been accepted by the defendants.
The suit was brought May 15, 1848, and was resisted on the grounds that Adams had no authority to accept the draft, so as to bind the corporation; and, secondly, that the acceptance was conditional, and the corporation had not received funds to pay the acceptance, according to its tenor. Inasmuch as it became necessary to ascertain the state of Cox’s accounts with the defendants, the account was referred to an auditor, whose report is a part of the case. It comes before the court on various exceptions, taken by the defendants.
1. At' the trial in the court of common pleas, the plaintiffs offered Adams as a witness, to prove that he was an agent of the corporation, and, as such, authorized to accept the draft in question; to which the defendants objected. The court, however, overruled the objection, and permitted him to testify to his agency and authority. This, we think, was according to the rule, that an agent, acting under a parol authority, is competent to prove his own agency by his testimony; a rule founded on convenience and necessity, and supported by general usage, and it does not come within any of the exceptions to the rule.
*343 2. The agent testified that he had paid, as agent of the company, numerous drafts and orders drawn on them, and not previously accepted by them. This evidence was objected to, because it was attempting to prove the contents of written instruments without showing their loss, or giving notice to the defendants to produce them; and because the payment of such drafts had no tendency to prove authority to accept drafts. The court overruled these objections, arid instructed the jury, that the payment of a draft not accepted included its acceptance, and, therefore, was evidence of an authority to accept drafts.
As to the first part of the objection, it is obvious that, if the drafts were thus paid, they were paid by the corporation, and for their account. A corporation must act by and through agents, directors, or trustees, because it can act in no other way. Perhaps the presumption is that these drafts, having been so paid, were cancelled or destroyed; but if otherwise, and if they may be presumed still to exist, it is to be presumed that they are held by the company, and could be produced by them, and so notice to produce should have been first given. If the case depended upon this point, we should say sufficient notice for this purpose might have been given at the trial; and, in a new trial, a very short notice would probably be deemed sufficient.
3. The second branch of this objection is entitled to more consideration. The instruction of the court, that the payment of a draft not accepted included its acceptance, and was evidence of an authority to accept drafts upon the company, was, in our opinion, incorrect in point of law. The acceptance of a draft is an executory undertaking to pay it at a future day, and the authority to make such an agreement is not incident even to the authority of an agent to purchase and pay for goods. The authority to accept is one of a very high character, particularly in the case of a trading corporation, to whose business credit, and the use of that credit, is constantly necessary. It has been argued, that such authority may be inferred from the course of trade, and the payment of unaccepted drafts upon the companv on other *344 occasions. But this implication does not follow from such payments; for, either the agent had funds of the company for the purpose of paying such drafts; which does not imply that he had authority to pledge their credit; or he paid them from his own funds, relying on the credit of the company, and their previous undertaking and liability to reimburse him for all his advances, which implies no authority whatever to bind them to a future payment of money, by an acceptance. I shall not go into an examination of the cases on this subject, but will refer to that of Webber v. Williams College, 23 Pick. 302, where the question was much considered, and many cases were cited.
The case of Emerson v. The Providence Hat Manuf. Co. 12 Mass. 237, goes to the point that, constituting one a buy* ing and selling agent of a trading company does not imply authority in him to give the negotiable note of the company.
In the case before us, the agent, by accepting the draft, bound the corporation, if he bound them at all, to account with another person than Cox, which might be very injurious to them, as it would exclude them from setting off what might be due to them from him. The authority to pay drafts applies only to that specific class of transactions, and, therefore, there can be implied from it no ■authority to agree to pay at a future day. If Adams paid the drafts from his own funds, he did so relying on his own authority, as agent, to that extent, to reimburse himself, or on the subsequent ratification of his acts by the company, as otherwise he was without remedy; for no man can make himself the creditor of another without his consent, express or implied. Without such consent, he pays in his own wrong.
4. The next point is, that the plaintiff’s counsel was permitted to argue from the fact, that the agent had made a contract with Cox for building certain machinery for the defendants, that he was authorized to pledge the credit of the company by his acceptances. We think the evidence had some tendency to prove that he was a general agent of the defendants, and, in that respect, was competent, though certainly it was very remote. The name of general agent might *345 imply, that he had authority to purchase materials for carrying on the defendants’ business, but it had little tendency to show authority to accept drafts for them.
5. The defendants then put in a vote of the directors of the corporation, that the proposition of Mr. Cox for building machinery be referred to Mr. Adams, and put in also a written proposition, made by Cox, which was different from the terms of the contract afterwards executed between him and the defendants; and the defendants’ counsel asked the court to rule, that this vote was a sufficient authority to Adams to make and execute the contract which was finally made, and, therefore, had some tendency to show an authority in Adams to pledge the defendants’ credit. But the court, on the other hand, ruled, that the vote of the directors merely authorized Adams to consider and report upon the proposition, and not to make a contract. The defendants then asked leave to prove by the directors, who had sold and transferred their stock in the company, that they understood the vote to confer upon Mr. Adams full authority to make and execute the contract. This the court refused to do, because the vote was in writing. This, we think, was correct; because the vote was a written instrument, and must be construed by its terms alone, with reference to the subject-matter to which it applies. If the terms of the vote imported the authority to make the contract, no parol testimony was necessary; if it did not, such testimony could not be competent to control and vary those terms.
6. The defendants’ counsel objected to the auditor’s report, because it stated that “ the defendants were in funds,” and requested the court to rule, that it was not competent for the auditor to pass upon that question, and that that part of the report which contained such statement should be stricken out; but the court ruled that it was within the province of the auditor to pass upon that question, and that the report was primd facie evidence of the facts within his province to inquire into.
Now, what does this objection apply to? The objection is, that the auditor expresses an opinion upon a question of *346 fact, a question which it is for the jury to pass upon ; but, in looking at the report, we find it is not open to that objection. The auditor was appointed to state the account between Cox and the defendants, to see what money he had earned under his contract with the defendants, and what money of his was in their hands, to answer his drafts upon them ; to see if the balance in their hands, after deducting a sufficient sum to pay the Fulton Iron Foundry, was sufficient to pay this draft of the plaintiffs. He found that the balance was sufficient, and reported, in the language of the acceptance, that they were in funds; that is, in the condition indicated by the acceptance as that in which their liability to the plaintiffs should take effect. This result depended upon the state of the accounts between the parties, and was a matter of fact, not the expression of an opinion. It was not an independent substantive statement of fact, but the result of the inquiry which he was directed to make, into the state of the accounts, and so was within his province. The items of the account, from which this result was drawn, were submitted, at the same time, for the examination of all parties, by which the correctness of such result could be readily tested.
7. Edward Crane, one of the directors of the company, was a witness introduced at the hearing before the auditor, and at the trial in court, by the defendants, and Charles E. Parsons was called by the plaintiffs, and testified, at the trial, that Crane had testified concerning the same subject-matter, on another occasion, in a certain trial between other parties; and he stated substantially what his testimony then was. The defendants’ counsel objected to the admissibility of this testimony, because the witness could not state the precise words used by Crane on that occasion, and because the plaintiffs’ counsel had not interrogated Crane, while upon the stand, as to whether he had ever testified differently from what he then testified. These objections the court overruled, and we think very properly. This point of practice is well settled, and the ruling conforms entirely to the practice in this commonwealth. Evidence respecting the testimony of a deceased witness, to which the counsel'taking this exception manifestly *347 referred, stands upon quite other grounds. If it is practicable to show the precise words of the deceased person, so as to give his own testimony exactly, then it is competent, otherwise not. 1 Greenl. Ev. \\ 163, 165. But the present case depends on an entirely distinct rule. It is substantially an impeachment of the credibility of the witness. It cannot be used to prove the facts to be as stated by the witness on the previous occasion; but merely to show that he then gave a different account of the same transaction. This affects the value of his testimony. It shows he has made a statement conflicting with the one he gives at the trial. If under oath on the. prior occasion, the evidence against his credibility is so much the stronger, but it is not necessary that he should have been sworn. The fact that he has stated the facts differently, shows either a failure of memory, that he has forgotten what he once knew, or else it shows a want of integrity, and either way it impairs the value of his testimony. But it is no evidence whatever that the facts are as he formerly stated; and, though appeals are sometimes made to a jury that it is so, it is the province of the court to inform them that it is not so. As to requiring a witness to be asked, while testifying in chief, whether he has ever made a different statement, as a basis for afterwards contradicting him, that is the English rule, but we have always adopted a different rule. After it has been shown, however, that the witness has made conflicting statements, he may be recalled for the purpose of explaining or reconciling them.
These are all the grounds necessary to be considered. The verdict must be set aside, and a new trial had in this court.

Exceptions sustained.