## Louisa E. Fein v. Covenant Mutual Benefit Association.

1. ERROR—*Without Exception Taken.*—A mere opinion expressed by the court without any exception thereto does not constitute error, even if it would have been otherwise, upon exception taken and duly preserved in the record.

2. PRACTICE—*Permitting the Jury to Take Affidavits, etc.—Harmless Error.*—An affidavit used at a coroner's inquest may, upon proper foun-

dation laid, be properly admitted in evidence for the purpose of contradicting the witness who made it, but it is error to permit it to be taken by the jury to the jury room; unless it appears that the party complaining of such action has been injured thereby, it is not reversible error.

3. CORONER'S VERDICT—*Evidence.*—The verdict of a coroner's jury is proper evidence under the law as laid down in United States Life Insurance Company v. Vocke, 129 Ill. 557.

4. ADMISSIONS—*By Counsel—Proof Unnecessary.*—The admission of matter on the trial of a suit by counsel for one of the parties litigant, renders further proof of such matters unnecessary.

5. INSTRUCTIONS—*Assuming Controverted Facts.*—On the trial of an action, where the vital question is whether a deceased person killed himself, or came to his death accidentally or as the result of the felonious act of a third person, it is error for the court to assume in an instruction that the deceased fired the pistol or that he fired a pistol into his brains.

6. SAME—*Error in, Not Cured by Special Findings.*—The error of an instruction, in assuming as true a question in controversy, is not cured by a special finding upon such fact as assumed, for the special finding may have resulted from the assumption of the fact as true by the instruction.

7. EVIDENCE—*Experiments—When Competent.*—Experiments are not competent as evidence unless they are conducted under circumstances very similar to those connected with the act to be illustrated thereby.

**Assumpsit**, on a policy of insurance. Error to the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed March 23, 1895. Opinion on rehearing filed August 31, 1895.

WM. P. LAUNTZ, attorney for plaintiff in error.

W. C. CALKINS and WISE & McNULTY, attorneys for defendant in error, contended that if Fein intentionally took his own life, the contract of insurance was forfeited and the insurer is relieved from liability. Suppiger v. C. M. B. A., 20 Ill. App. 595; Saban v. Senate, No. 21 Ins. L. J., 853; Frey v. Germania, 14 Ins. L. J. 308; Chapman v. Republic Ins. Co., 4 Ins. L. J. 511, 571; Cooper v. Mass. Ins., 102 Mass. 226; Degorgia v. Knickerbocker, 65 N. Y. 233; Pierce v. Travellers, 34 Wis. 389; Salantine v. Mut. B. S., 24 Fed. Rep. 159; Scarth v. Security M., 39 N. W. Rep. 658; Mutual L. v. Hayward, 27 S. W. Rep. 36; Bigelow v. Benkshire, 63 U. S. 284; Adkins v. Columbia, 70 Mo. 27.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

It is urged that the court erred in refusing to permit plaintiff in error to amend her declaration. An examination of the record shows that the court offered to permit the amendment to be made, expressing the opinion at the time, however, that the amendment would do no good. Plaintiff in error did not except to this remark, or seek to take advantage of the leave granted, and hence is in no position to insist that the court ruled erroneously upon this branch of the case. In fact, the ruling of the court was favorable to plaintiff in error, and the mere opinion of the court, without any exception thereto, does not constitute error, even if it would have been otherwise upon exception taken and duly preserved in the record.

As to John Fein's affidavit at the coroner's inquest, it is sufficient to say that it was admitted in evidence on the trial of this case, upon foundation properly laid, for the purpose of contradicting the witness, and was competent as impeaching evidence. The court should not have permitted this affidavit to be taken by the jury to the jury room, because it was practically a deposition, which the jury, under the statute, had no right to inspect during their deliberations; and yet it is hardly probable that plaintiff in error was prejudiced by this ruling of the court, since the statement in the affidavit had been repeated to the jury in the course of John Fein's testimony till they must have remembered it clearly, whether the paper itself was before them or not.

The verdict of the coroner's jury was proper evidence under the law as laid down in United States Life Insurance Company v. Vocke, 129 Ill. 557.

There was no error in refusing to grant a new trial either on the ground of newly discovered evidence, or that the verdict was against the weight of the evidence.

The lengthy argument of counsel for plaintiff in error, concerning the effect of the alleged insanity of the deceased upon his widow's right to recover under the insurance policy, is a mere waste of ink, paper, declamation and rhetoric,

in view of the following statement of the record :  " Plaintiff then offered to prove that deceased, the insured, was at the time of and prior to his death, sound mentally, and perfectly sane.  The defendant's counsel stated to the court that for the purpose of dispensing with any further proof on that point, he would admit it."

Under this admission, the only questions for the jury were whether the deceased killed himself, or came to his death accidentally, or as the result of the felonious act of a third person.  These were the vital questions in dispute, and it was therefore error for the court to assume in the second instruction given for the defendant in error, that the deceased fired the pistol, and in the fifth instruction given for the same party, that the deceased fired a pistol into his brain.  The giving of these instructions was such error as requires the reversal of the judgment.  Nor can it be contended that the special finding that the deceased committed suicide, cures this error, for the special finding may have resulted from the assumption of the fact as true by these instructions.

One other .question demands consideration.  It was a disputed point whether or not there were powder marks on the face of the deceased.  Plaintiff in error offered to show by John Fein that experiments on white paper, made by him with the same pistol with which the insured had been killed, and with cartridges from the same box, at distances of three and six inches, and one, two, three, four, five, six, seven and eight feet, showed " powder-burns sufficient to have penetrated and left powder-burns on the face of the deceased."  This witness had already sworn that powder would burn the face at a distance of seven feet and that his opinion was based upon experiments with the same pistol and with cartridges from the same box.  The court refused to permit the particulars of the experiments to be given to the jury.  It is certain that such experiments are not competent evidence, unless they are conducted under circumstances very similar to those connected with the act to be illustrated thereby.  Libby, McNeill & Libby v. Scherman, 146 Ill. 540;

C. & A. R. R. Co. v. Logue, 47 Ill. App. 292. But in the case at bar the conditions were substantially the same, except that paper was used, instead of the skin of a living man. The difficulty of obtaining the latter substance for such an experiment is manifest without argument, and so the substitution of paper was the best that could be done under the circumstances. We are inclined to the opinion that the evidence was proper for the consideration of the jury.

For the errors indicated, the judgment is reversed and the cause is remanded.

OPINION ON REHEARING BY MR. JUSTICE SCOFIELD.

In the opinion heretofore filed in this cause it was held that the trial court should have permitted plaintiff in error to show the result of certain experiments as to powder-burns on white paper, which experiments had been made with the same pistol with which the insured had been killed, and with cartridges from the same box, at distances varying at from three inches to eight feet. In the petition for rehearing it is said that the evidence does not justify the statement that the experiments were made with the *same pistol*. A careful re-examination of the record has satisfied us that this criticism is just. We gladly correct the inaccuracy, although the decision of this case is by no means affected thereby. The fact that it was not the *same pistol* would not be a controlling fact where the evidence showed that it was a pistol of the *same make and caliber*.

It may be that counsel for defendant in error have made use of this point merely as an introduction to a re-argument of the proposition that such evidence is not admissible at all. At any rate, the question has been re-argued, and authorities, new and old, have been cited. This court has been accused of citing defendant in error's authorities and then overruling them. Counsel have overlooked the distinction between overruling authorities and overruling an able, but not disinterested attorney's misapplication of authorities. We are requested to state whether or not we will overrule all the decisions of this and other States bearing upon the question, by holding this evidence to be proper. We an.

swer, that to hold this evidence to be proper does not require us to undertake the Herculean task of overruling these decisions, for the reason that these decisions have no controlling application to the facts of this case.

Let us consider the five cases cited in the petition for a rehearing, which we are charged with having overruled.

In the case of Kolb v. Chicago Stamping Company, 33 Ill. App. 488, the boy Kolb had been injured by a certain machine and the offer was to show that other boys had been hurt by similar machines in the same shop. The court say that these other boys may have been injured by their own fault or carelessness, and that "the admission of such evidence would require the trial of their cases in this suit." The inapplicability of this decision to the case before us is strikingly manifest.

In C. & A. R. R. Co. v. Logue, 47 Ill. App. 292, the question arose as to whether or not the engineer in his engine, with the train running at the rate of forty-five miles an hour, at the hour of 6:40 p. m., could distinguish a certain object on the track to be a child, in time to check the train so that the mother could save the child. "The court allowed evidence to go to the jury, of a coal-bucket, containing coal, having been placed upon the track by witnesses, who walked up the track and then were permitted to testify as to the distance (at which) they could distinguish what it was and what it contained." The court say: "There was also error in the admission of evidence as to placing an object on the track and proof as to the distance it could be seen and distinguished, where the circumstances and surroundings were wholly different from those attendant on the engineer in the discharge of his duties." This decision is above criticism. The elevation of the engineer above the track, the rapidity of the motion, the oscillation of the engine, the condition of the atmosphere, the distracting and responsible duties of the engineer, were not taken into account in the coal-bucket experiment.

In Libby, McNeill & Libby v. Scherman, 146 Ill. 540, an effort was made to cover the whole case by an experiment

with barrels, and the court very properly held that such evidence should not be admitted. The point of the decision sufficiently appears from the following sentence: "The question is not whether a pile of barrels might not stand with an empty barrel situated as was the one in this case, but whether leaving such barrel in the condition shown, rendered the support of the barrels above it less secure, and that to such a degree as to constitute negligence, and whether the plaintiff's injury occurred as the result of such negligence."

It is said that the New York Court of Appeals have passed upon "this precise question," in Yates v. The People, 32 N. Y. 509. Let as see:

That was an indictment for murder, under which Yates had been convicted of murder in the first degree. The prisoner had killed his pursuer, and it was a material inquiry whether or not he knew that his pursuer was an officer. Actual knowledge was not proved. In the place thereof proof of attending circumstances was made. It was shown that the officer wore his uniform, that the prisoner's vision was defective, and that the homicide occurred near a street lamp. "There was positive proof given by the prisoner that the lamp shed no light on the deceased and the prisoner at the time of the fatal rencounter." Nearly four months after the occurrence, experiments were made to see how far the rays from the lamp extended, and to what extent a newspaper could be read by the light. The result of these experiments was given in evidence. This was held to be error in each of the two opinions filed in the case. Brown, Justice, said in his opinion, that there was no proof that the structure of the lamp was the same, or that the "combustible material" in the lamp was the same, on the two occasions. Potter, Justice, in his opinion, held that the evidence in question was inadmissible, "first, because at that time there had been no reliable evidence that the lamp was lighted on the night of the homicide, but the contrary; second, there was no proof of the difference in the shades or degrees of darkness between the night of the homicide,

and the night of the witnesses' experiment; third, there was no evidence of the difference in the eyes of the witness and the eyes of the prisoner, as to their focal point; and fourth, more than all, this was not rebutting evidence."

Instead of the Yates case being precisely in point, it is precisely not in point as to the question under consideration.

In C., St. L. & P. R. R. Co. v. Champion, 36 N. E. 221, it was held that the offer to prove the result of certain experiments was properly refused, because "there was neither evidence nor statement that the track or car was in essentially the same condition, or whether the brake was tightly or loosely set, or whether the car was kicked hard or easy."

The point made in these cases and in others which have not been cited, is that the conditions under which the experiments were made were not substantially the same as the circumstances surrounding the fact to be illustrated. For this reason the evidence was held to be improper. The converse of the proposition should be true — that is, if the conditions are substantially the same, the result of the experiments would ordinarily be proper. There are decisions to this effect, some of which will now be noticed.

In Lincoln v. Taunton Copper Manufacturing Co., 9 Allen 181, it was held that where an expert called by the plaintiff had testified that he had obtained copper from grasses taken from the plaintiff's land, the defendants might introduce similar testimony to show that copper existed in, and had been obtained from, grasses not exposed to the influence complained of and made the basis of the action.

In Eidt v. Cutter et al., 127 Mass. 522, the opinion of the court, which is brief and pointed, is as follows: "The question in controversy, and upon which both parties had introduced the testimony of experts, was whether the injury to the plaintiff's house was caused by the fumes and gases from the defendant's works, or by the emanations from a sewer. The grounds and reasons of the opinions of the experts, including the details of experiments made by them, under conditions and circumstances which, as they testified, were as nearly as possible like those surrounding the plaint-

iff's house, in the absence of the sewer, were rightly permitted to be stated by the experts, in order to assist the jury in understanding their testimony and applying it to the case."

In L. E. & W. R. R. Co. v. Mugg, 132 Ind. 168, it was held that where the defendant had produced a witness who had given expert evidence as to the result of the examination of the heel of the boot worn by the deceased at the time of the accident, it was proper for the court to permit the plaintiff to introduce a shoemaker as a witness in rebuttal on this question.

In Sullivan v. The Commonwealth, 93 Pa. St. 284, it was held that where a physician had been called as an expert to show the effect of powder marks where a pistol is fired at short range, the physician's testimony and the cloth or muslin used in his experiment were admissible in evidence on the trial of a prisoner for murder committed by means of a pistol.

In Smith v. The State of Ohio, 2 Warden (Ohio St.) 511, the prosecuting witness, in the trial of an indictment for malicious shooting, testified as to his position and attitude in the parlor of a tavern when he was shot at, and swore to the identity of the defendant as the person who shot at him, as seen through a glass window and by the light of the flash from the pistol. The State examined several witnesses who were not present at the shooting, as to the result of experiments subsequently made by them, at the same place, for the purpose of showing that the prosecuting witness could have recognized the defendant under the circumstances.

It was held to be proper for the defendant to show the opposite result of similar experiments made in another place, but under like circumstances. The point having been made that the proper rebutting proof would be the opinion of experts, the court, by Allen G. Thurman, Justice, say: " Now I apprehend that the firing of a pistol in a man's face at the distance of a few feet, is not quite so common an occurrence as to have raised up a class of ' experts ' whose acquaintance ' with the laws of light and vision ' makes their opinions, in a case like the present, the only competent testimony,

or gives to such opinions any preference over the proof of facts. It requires no scientific witness to tell a jury whether he saw the eyes and nose and white of the teeth of a man who shot at him by the flash of the pistol that he fired. And proof that a number of men of ordinary powers of vision have tried the experiment and found themselves unable thus to distinguish countenances—found that their vision was not thereby aided at all, is evidence entitled to as much, if not more, weight, than the opinions of scientific men can be. For the question whether a face can be thus told is merely one of fact and not of science; and any man, whether learned or unlearned, after hearing the proofs, can decide with reasonable certainty upon its probability."

With the foregoing proposition of law in mind, let us consider for a moment the facts of the case before us.

The question is whether John Fein, Sr., killed himself or was killed by another. Plaintiff in error introduced evidence tending to show that there were no powder marks on the face of the deceased and defendant in error introduced evidence tending to show the contrary. Defendant in error put upon the witness stand a physician named Wiggins, who swore that a revolver would leave powder marks upon the face if fired within three or four feet and would do so " in all cases where held close." How did Dr. Wiggins know this to be the fact? Either by reading or by hearing or by personal experiment. Rarely, indeed, would a physician obtain such information by actual observation of one man shooting another when within three or four feet of him. If the information came from reading or hearing, whence did the author or speaker acquire his knowledge? When traced to its source, the knowledge of the effect of powder marks appears to be derived mainly from experiment. If the witness may testify to the fact, why may not the basis of his knowledge be shown, either on direct examination, to strengthen his testimony, or on cross-examination, to weaken it? In this case Dr. Wiggins was asked, on cross-examination, how he had ascertained that a " powder-burn would show at a distance of three feet away from the object; " and he answered that he had ascertained the fact by experiment.

As rebutting this evidence, plaintiff in error offered to show the result of certain experiments as to powder-burns, at from three inches to eight feet, where the experiments were conducted with a pistol of the same make and caliber and with cartridges from the same box. The witness had already stated, without objection, that powder from such a pistol would burn the face at the distance of seven feet, and that he knew this by experiment. When asked as to the particulars of the experiment, he was checked by an objection. If the conclusion may be shown, the basis of the conclusion may be shown also.

The fact that the witness was not a physician is immaterial. A man without medical knowledge may be as competent as a physician to testify upon this question. Besides, the objection to the testimony was general. It was not urged that the witness was not an expert.

We are unable to see why the evidence was not admissible, and we adhere to our former holding that the court erred in rejecting it.

The petition for a rehearing also alleges that this court should not have reversed the judgment for the errors contained in the second and fifth instructions given at the instance of defendant in error. It is conceded that these instructions do, " to a certain extent invade the province of the jury." But it is said in effect that plaintiff in error could not recover in any view of the case, and that, for this reason, the province of the jury might be invaded without prejudicial error. The conclusion is logical enough, but we are not disposed to admit the premises. Without intimating that the case of the plaintiff in error was either strong or weak, it is sufficient to say that she had a right to go to the jury upon the evidence, and that therefore it was error for the court to invade the province of the jury in a vital point by the giving of the second and fifth instructions.

The petition for a rehearing is denied.