# Roy E. Johnson, Appellee, v. The N. K. Fairbank Company, Appellant.

## Gen. No. 14,968.

1. CONTRIBUTORY NEGLIGENCE—*when minor cannot be guilty of.* A child under the age of five years is not chargeable with contributory negligence.

2. EVIDENCE—*effect of impeaching testimony.* "Prior self-contradictions, when admitted, are not to be treated as assertions having any substantive or independent testimonial value, * * * otherwise they would, in truth, be obnoxious to the hearsay rule."

3. EVIDENCE—*what not inherently competent by way of impeachment.* A previously expressed opinion, not being necessarily inconsistent with the truth of some assertion of fact in the testimony of a witness, does not tend to impeach the truth of the testimony, and, therefore, is not admissible in evidence.

4. EVIDENCE—*test of competency of impeaching evidence.* It is only the repugnancy and inconsistency in point of fact, between a statement previously made by a person testifying and some statement or assertion he makes when he testifies, that makes the previous statement competent and admissible in impeachment.

5. EVIDENCE—*admissions of law not competent in impeachment.* Admissions of a party in relation to questions of law are no evidence and matter involving law as well as fact falls within the rule and is incompetent in evidence against a party in impeachment.

6. PRACTICE—*section 76 of Act construed.* A written statement which has been used for impeaching purposes is not proper to be carried from the bar by the jury.

7. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

8. NEW TRIAL—*when newly discovered evidence not ground for.* Newly discovered evidence which consists in the testimony of an officer of the party corporation presenting the same does not justify the granting of a new trial notwithstanding such officer may have failed to convey his knowledge to the attorney of such corporation.

9. INSTRUCTIONS—*when submission of question of law will not reverse.* While a modification of an instruction by adding thereto the following words, "It is for you to determine the question of liability and the court has nothing to do with that matter," is improper; yet, held, that under all the instructions given in this case it must have been apparent to the jury that what the court intended to say was, "It

is for you to determine the facts in connection with the question of liability," etc., and a reversal therefore was not ordered.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed June 3, 1910.

**Statement by the Court.** The Superior Court rendered a judgment against The N. K. Fairbank Company, defendant, upon a verdict, for $1,500, and by this appeal the Company seeks a reversal of that judgment. In the forenoon of April 24, 1906, plaintiff had his right thigh bone broken, at about the junction of the middle and upper thirds of the bone, by a wagon of the defendant driven by one of its drivers. As a result plaintiff's right leg is somewhat shorter than his left. When injured, plaintiff was about four and one-half years of age. The accident occurred at the southeast corner of Princeton avenue and Thirtieth street in Chicago.

At the time plaintiff was injured a kerosene and gasoline tank-wagon, from which an oil peddler was selling oil, stood about in the middle of Princeton avenue, immediately south of Thirtieth street and facing north. The head of the horse hitched to that wagon was about on a line with the south curbstone line of Thirtieth street. The distance between the south building line and the south curbstone line on Thirtieth street is not disclosed in the evidence. The tank-wagon's left wheels were about in the middle of Princeton avenue. The Princeton avenue driveway is 38 feet wide. The curbstones at the southeast corner of the two streets, where plaintiff was when injured, are curved so as to make a round corner. Directly in front of that corner there was a grating over a sewer opening. Plaintiff lived with his parents in the building on the southwest corner of the streets mentioned, which building fronted on Princeton avenue. Mrs. Grant, plaintiff's principal witness, also lived in that building. At the time of the accident Mrs. Grant, who had sent her boy out to obtain oil, happened to stand in her front window, looking out at the peddler drawing oil for her boy. She testi-

fied that from where she stood she saw the entire occurrence in connection with plaintiff's being injured. She is the only witness who did see the entire occurrence. She testified that plaintiff, with his little brother who stood about four feet east of him, was upon the sidewalk at the southeast corner; that defendant's team with a truck came walking from the south, on Princeton avenue, and the driver of the team sat "doubled over" with his elbows on his knees and the reins in his hands; that the team turned a little toward the east to pass by the tank-wagon and as the horses' heads, starting around the corner of the tank-wagon, were about six or eight yards away from where the plaintiff stood, the latter got down off the curb into the gutter to ram something into the sewer-grating, which was close up to the curb; that he was lying on his stomach with his head south, with one arm (the witness said the right, but, obviously, she was in that respect mistaken) upon the curb and with the other ramming something into the grating; that she watched him "particularly" and as he placed himself in the position in which he was, when injured, the horses were about two yards and a half from him; that the front wheel of the truck just escaped touching him; that "the hind wheel caught him and hit the hip—kind of pushing the little boy upon the curb;" that the hind wheel was within a few inches of the curb as it passed; that she called out to the oil peddler that the team had run over the boy but, because of the noise made by the ringing of the bell on the oil wagon, he did not understand her; that the oil peddler picked up the child, followed the teamster across Thirtieth street and called out to him that he had run over the child. The teamster then stopped and the oil peddler brought the plaintiff into his home.

Martin Finn, the teamster, on behalf of defendant, testified that he was driving along with his team walking at the rate of about three miles an hour; that his truck weighed about 4,500 pounds and was loaded with sixteen barrels of grease weighing about four hundred pounds each; that he saw the tank-wagon and "swung" over to the right to pass it; that he was two feet from the east curb when he passed;

that when he was twenty feet south of where plaintiff stood he noticed plaintiff standing with his, plaintiff's, brother; that plaintiff was then about twelve or fourteen feet south of the southeast corner of the two streets; that he did not see plaintiff do anything at or near the grating at the corner; that he did not see plaintiff get under the wheel; that when he reached a point about twenty feet north of Thirtieth street and was called by the oil peddler he first learned that he had run over the boy; that before passing the tank-wagon he had been driving ten or fifteen feet from the curb; that he last saw the boy in passing him and the boy was still standing in the same place where witness first saw him when the seat of the wagon passed the two boys; that the boys then stood on the curb, about two feet from the wagon, looking up at witness and having hold of each other's hands; and that he did not see the boy get "over" and lie down upon the sewer grating.

The oil peddler testified that upon hearing the boy screaming he went over and picked him up from the grating on the corner.

The foregoing is all the evidence as to the occurrence.

Defendant endeavored to impeach Mrs. Grant's testimony by evidence of previous statements made by her out of court. Defendant introduced a statement signed by her as follows:

"Mrs Grant's Statement, 3000 Princeton Ave.

'I live at 3000 Princeton Ave., Chicago, and saw the wagon driven by Martin Finn and owned by The N. K. Fairbank Co. run over Roy Johnson today, April 24, 1906. I was standing in my front bedroom at the time. An oil wagon driven by Martin Sorenson was standing just about the middle of Princeton Ave., the front of the wagon being about even with the south curb of 30th St. ~~Some children were stand-ing west of the oil wagon.~~ The Fairbank wagon drove" to the right of the oil wagon, going north on Princeton. Roy was playing on the sidewalk on the east side of Princeton near the corner. After the ~~front wheel~~ horses of the Fairbank wagon passed the boy, he got down with part of his body ~~on the curb~~ and his right arm on the curb, apparently trying

to cram something down the grating over the sewer in the street right at the corner with his left hand. His legs were sprawled out on the street and the right hind wheel of the wagon passed over the back of his leg near his body.

The Fairbank wagon was being driven at a slow walk at the time of the accident and the accident could not have been prevented. The driver was wholly blameless.

April 24/06.                                    Mrs. M. F. Grant."

The words "and the accident could not have been prevented. The driver was wholly blameless" were excluded by the court.

This written statement was procured from Mrs. Grant by one of the defendant's attorneys, on the afternoon of the day of the accident. He testified that Mrs. Grant told him in substance the facts as contained in the statement; that he was very careful, in preparing the statement, to read it over to her after he had written it; that he handed it to her and she read it and signed it in his presence; that when offered in evidence it was in exactly the same condition as when she signed it; that he was preparing for the defense of a possible lawsuit and that he wanted it to appear from the statement that the Fairbank driver was blameless. Mrs. Grant testified with reference to this statement, that she remembered some gentleman coming to her house and writing some statement which she signed; that when the gentleman came she told him the facts exactly as she had testified the facts to be; that she did not remember whether or not he read the paper to her before she signed it; that she did not read it before she signed it and that she did not tell him that the accident was not the driver's fault or that it could not have been helped.

Evidence of various witnesses, as to previous statements made out of court by Martin Finn, was introduced by plaintiff to impeach Finn's testimony.

OLIVER & MECARTNEY, for appellant.

FRANCIS J. WOOLLEY, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The plaintiff, who was about four and-one-half years of age when injured, was not chargeable with negligence; there is, therefore, no question of contributory negligence in this case. Assuming Mrs. Grant's testimony to be true, the driver of the defendant's truck was clearly negligent in failing to avoid injuring plaintiff. If the driver failed to observe plaintiff, in time to avoid injuring him, the driver was negligent in so failing. If he observed the plaintiff, which is not believable, he wilfully and wantonly injured him. There is nothing inherently incredible in the evidence of Mrs. Grant. By their verdict the jurors indicated that they did not consider her testimony impeached by the evidence of previous contradictory statements. Previous contradictory statements by Martin Finn were introduced in evidence by plaintiff to impeach Finn's testimony. The impeaching evidence directed against his testimony was such that the jury might well regard it to be fully as effective in its purpose, or even more so, as the impeaching evidence directed by the defendant against Mrs. Grant's testimony. However, previous statements by a party or a witness, particularly when not made under oath, are admissible and have force or potency only to impeach the party's or the witness' testimony, or the party's position in the cause, and have no assertively probative value to prove or disprove the original fact in issue. As stated in Wigmore on Evidence, sec. 1018 "(b) Prior self contradictions, when admitted, are not to be treated as assertions having any substantive or independent testimonial value; * * * otherwise they would, in truth, be obnoxious to the hearsay rule." To the same effect are Gould v. Norfolk Lead Co., 63 Mass. 338, 347; Moore v. People, 108 Ill. 484, 488; Ritter v. People, 130 Ill. 255. There being but one witness on each side as to the facts upon which the question of negligence must be determined, and the credibility of both being attacked by impeaching evidence, the conflict of fact is thereby intensified. Under the circumstances, we see no reason for setting up our judgment against

that of the jury, particularly, as after a careful considera-
tion of the evidence, it appears to us that there is much less
inherent improbability in Mrs. Grant's version of the oc-
currence than in Finn's.   According to Finn's version plain-
tiff stood twelve or fourteen feet south of the corner, holding
his brother's hand, when the seat of the truck with Finn
seated thereon passed plaintiff.   This version requires plain-
tiff, after the seat of the truck passed him, to get from where
he stood to the corner and place himself in the position in
which he was injured upon the sewer grating, where he was
when picked up, without his being observed by the driver.
Finn testified he did not see plaintiff go to the sewer grating
and lie down there.   The brief space of time requisite for the
truck to pass the twelve or fourteen feet, as well as the non-
observance by the driver of any such movements on the part
of the plaintiff, render this version very improbable.   The
more probable version is that, in passing, the driver was ab-
sorbed in thought, inobservant and inattentive, so that he
failed to see the child lying on the grating and that, conse-
quently, plaintiff was injured by the rear wheel of the truck.
In determining upon credibility, as between Finn and Mrs.
Grant, it must not be overlooked that Finn was concerned in
the result of the trial in that he was interested in exculpat-
ing himself, to his employer, from blame.   So far as we can
see, Mrs. Grant is not shown to be in anywise interested.   It
cannot be assumed that she testified falsely for plaintiff,
merely because she was acquainted with his parents and with
him.    While there is credible evidence in the record tending
to impeach Mrs. Grant, by way of previous contradictory
statements, we are not ready to say that there is no other
explanation of the apparent contradiction of statement than
that she testified falsely.   In respect to the merits, we do not
feel justified in disturbing the verdict and judgment.   The
evidence is sufficient for the jury to have arrived at the con-
clusion that the truck driver failed to exercise the degree of
care required under the circumstances.

The court denied a motion by defendant that Mrs. Grant's
previous statement, above shown, be taken by the jury to

its room upon retiring to consider its verdict. This ruling is assigned as error. The contention in this respect is predicated upon the applicability of section 76 of our Practice Act, which reads: "Papers read in evidence, other than depositions, may be carried from the bar by the jury." The purpose of the motion that this written statement of Mrs. Grant be taken to the jury room doubtless was that it might receive from the jury a special, particular or more careful consideration beyond that received by other evidence, of the same nature or character, which was not reduced to writing and, therefore, was not or could not be sent to the jury room. Had the paper been permitted to go to the jury room and had it served any such purpose the unfairness to the plaintiff of such procedure is obvious and clear. If permitting the statement to go to the jury would have served no purpose, the ruling was harmless to the defendant. We think the statement is not such a paper as was in the legislative mind in the enactment of the statute invoked and that it is not within the spirit of the statute.. To send such a statement to the jury room would be very much like sending to the jury room an unsworn deposition of a witness, taken *ex parte*, after the statements therein had been disowned by the witness from the witness stand. The policy of the lawmaking power in respect to what shall be taken to the jury room is, to some extent, indicated by the fact that the statute expressly excludes depositions from the jury room.

Before the enactment of the above statute there was one substantially the same except that the words "other than depositions" were omitted. That former statute came before our Supreme Court for construction previous to the enactment of the present law. It was then held, in the absence of any express exclusion, that depositions did not come within the spirit and meaning of the words "papers * * * used as evidence" contained in that former statute. The court, in its opinion, said that the statute referred to and contemplated. patents, deeds, notes and the like, papers which had been used as evidence. Rawson v. Curtiss, 19 Ill. 455, 479. Allowing those written instru-

ments to be taken to the jury room is a very different matter from sending to the jury room such papers as the one here involved. In Smith v. Wise & Co., 58 Ill. 141, the question arose upon a paper introduced in evidence, purporting to be the admission or statement of what an absent party would have testified if present, and, upon the authority of Rawson v. Curtiss, the court held it to be improper to permit a jury to take such paper to the jury room and have it with them in their deliberations. In Fein v. Covenant Mut. Ben. Ass'n, 60 Ill. App. 274, it was held error to permit to be taken to the jury room an affidavit of a witness, admitted in evidence for the purpose of contradicting and impeaching his testimony. In Dunn v. People, 172 Ill. 582, 589, the principle of Rawson v. Curtiss was approved and followed. The unjustness of permitting the jurors to take with them to the jury room a part of the evidence is emphatically pointed out in Rainforth v. People, 61 Ill. 365. We regard the ruling of the learned trial judge as correct in excluding Mrs. Grant's statement from the jury room.

The exclusion from the jury of the words "the accident could not have been prevented. The driver was wholly blameless," contained in Mrs. Grant's statement, is assigned for error. It is conceded, necessarily, that Mrs. Grant's opinion both that the accident could not have been prevented and that the driver was wholly blameless is, in itself, wholly immaterial and irrelevant as tending to prove any issue pending directly between plaintiff and defendant. But it is contended that what Mrs. Grant, previous to her examination, had stated her opinion to be, regarding the possibility or impossibility of prevention of the accident and regarding the driver being blameless, is competent and material in impeachment of her testimony given at the trial. Counsel making the contention have pointed out no specific statement or assertion of a fact, made by Mrs. Grant in her direct or redirect examination, which raises a square issue that, necessarily, either her previously expressed opinion or her testimony is untruthful. Neither have we found any such specific statement or assertion of fact in her direct or re-

direct testimony. A previously expressed opinion, not *necessarily* inconsistent with the truth of some assertion of fact in her testimony, would not tend to impeach the truth of her testimony and, therefore, would not be admissible in evidence. She may, at the time of the accident, have believed that the child was careless, that its parents were careless in permitting it to be about the streets at its age or for any one of innumerable other causes operating in her mind she may have had the opinion that the driver was wholly blameless and that the occurrence was not preventable. In expressing her opinion that the occurrence was not preventable, she failed to state why or by whom it was not preventable. Nevertheless it was sought to introduce that vague expression of an opinion in impeachment of her testimony as to facts or to discredit some assertion of the fact in her direct testimony which defendant does not point out to us. It is quite clear that the driver was guiltless of any evil intent or wilful wrong. It is possible that she had this phase in mind, assuming she actually expressed the opinion, which she denies. Her opinion in that regard would be of no value in impeachment herein. If it was her thought that the driver was wholly blameless because he was not negligent, her opinion is, nevertheless, not *necessarily* inconsistent with any statement or assertion of fact in her testimony given in her direct examination. It is only the repugnancy and inconsistency in point of fact, between a former statement, made by one testifying, and some statement or assertion made by that person when testifying, that makes the former statement competent and admissible in impeachment. Where no such repugnancy or inconsistency can be pointed out, the former statement is not admissible. When the former statement consists in an opinion expressed, then, as put, substantially, by Professor Wigmore in his work on evidence, section 1041, the inquiry arises: Is there within the broad statement of the previously expressed opinion some assertion of fact which is necessarily inconsistent with an assertion of fact made on the witness stand? The previously expressed opinion must be received in evidence, in rebuttal, if there is;

but if there is not, then it is not competent or admissible. No such necessary inconsistency has been pointed out to us in connection with the expressions of opinion offered for the purpose of impeaching Mrs. Grant's testimony.

We have been referred to no Illinois case inconsistent with what we have here said. The cases cited from other states have been carefully examined and they are found to be cases either not well considered and without citation of authority or not really in point.

It may also be that Mrs. Grant's previously expressed opinion that the driver was wholly blameless, written for her by a lawyer after he had talked with her, interrogated her and who was anxious to exonerate his client, involved questions both of law and fact. If so the rule applicable in such case to parties would, by analogy, be applicable to her, although a witness and not a party. "It is well settled that the admissions of a party in relation to a question of law are no evidence. *  *  .* And where the matter admitted involves a question of law as well as fact, it falls within this rule, and is therefore incompetent proof." Crockett v. Morrison, 11 Mo. 3.

Upon the argument of the motion for a new trial defendant urged, among other reasons, the ground of newly discovered evidence. This supposed newly discovered evidence consisted of testimony by F. H. Brennan, secretary and treasurer of defendant, and by a lady stenographer in his office. The testimony is to the effect that a few weeks after the accident Mrs. Grant and Mrs. Johnson called at Brennan's office and that Mrs. Grant there, to defendant's secretary and treasurer and in the presence of the stenographer, made statements inconsistent with the testimony which she subsequently gave upon the witness stand. We know of no theory upon which this corporation defendant can rightfully claim that statements made to its secretary and treasurer, long prior to the trial, should, after the trial, be regarded as newly discovered evidence for the purpose of granting it a new trial, although the secretary-treasurer failed to convey his knowledge to the attorney of the corpo-

ration who tried the case. Furthermore, this supposed new-
ly discovered evidence consists of merely cumulative im-
peaching evidence and is not sufficient to entitle defendant to
a new trial.

Complaint is made of a modification made by the trial
judge in an instruction tendered and given on behalf of de-
fendant. The instruction was given as follows:

"The jury are instructed that the fact that the court had
given any instructions on the subject of the plaintiff's dam-
·ages or injuries is not to be taken by the jury as any inti-
mation by the court or as any admission by the said defend-
ant of the said defendant's liability for the injuries com-
plained of. It would be wholly unwarrantable to consider
those facts as implying or intimating that the said defendant
is liable for any damages to the plaintiff. It is for you to de-
termine the question of liability and the court has nothing to
do with that matter."

The modification consisted in adding the last sentence.
The modification does not state with perfect accuracy the
proposition of law which the learned trial judge intended to
express. Undoubtedly the intention was to say: It is for
you to determine *the facts* in connection with the question
of liability, etc. But numerous instructions, accurate and
correct in this respect, were given by both sides and, al-
though, as a general proposition, an erroneous legal proposi-
tion in one instruction is not cured by the proposition being
correctly stated in another instruction, yet we think that, in
this case, the jury was not misled. Several times and in
several ways, in instructions given relative to the duty of
the jury in connection with the determination of liability,
the court instructed the jurors correctly that they were to de-
termine the questions of fact; that they must look to the in-
structions for the law; that they must apply the law so laid
down to the facts, and that they would not be justified in
finding a verdict contrary to the law as laid down in the in-
structions. Under the circumstances no man of ordinary
intelligence could have been misled by the instruction com-
plained of.

Other errors are argued and we have carefully considered the arguments advanced, but we find no error in the record that requires a reversal of the judgment. The judgment is affirmed.

*Affirmed.*