# Lewis N. Nelson et al., Appellants, v. Northwestern Elevated Railroad Company, Appellee.

## Gen. No. 16,413.

1. EVIDENCE—*when impeaching statement improperly used.* While a prior written statement of a witness at variance with his testimony on the trial is proper to be used and under some circumstances may be put in evidence after the attention of the witness has been called thereto, such a statement cannot be used as affirmative evidence, and where it contains matters of opinion the party against whom it is used should be protected from harm by appropriate instruction.

2. TRIAL—*what should not be taken by jury upon retirement.* A written statement used for purposes of impeachment should not be taken by the jury upon retirement.

Action in case. Appeal from the Municipal Court of Chicago; the HON. JOHN C. SCOVEL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded. Opinion filed April 25, 1912.

EUGENE R. COX and SIMON LA GROU, for appellants.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellee; CLARENCE A. KNIGHT, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an action in case brought in the Municipal Court of Chicago by appellants, plaintiffs below, against Northwestern Elevated Railroad Company, appellee, defendant below and hereinafter referred to as defendant, in which plaintiffs seek damages for the destruction of an automobile by reason of a collision, December 24, 1908, with a train of the defendant at the intersection of its road with Kenilworth Avenue, in the city of Chicago. Plaintiffs demanded a trial by jury, which was had, resulting in a verdict of not

guilty, upon which verdict judgment was entered in favor of the defendant, and plaintiffs appealed.

The facts are substantially as follows: Kenilworth avenue in said city runs east and west, and at the point of its intersection with the double tracks of defendant's road said tracks run upon the surface and in a direction almost due north and south. A short distance north of Kenilworth avenue said tracks curve in a northwesterly direction. East of said tracks and north of the north line of Kenilworth avenue are trees, telegraph poles, a house and a flagman's shanty, which tend to conceal the approach of a train from the north to occupants of vehicles approaching said tracks on Kenilworth avenue from the east. The shanty was immediately east of said tracks. There were no gates at the crossing, but the company maintained a flagman there to warn persons of an approaching train. One of the plaintiffs, Lewin, had lived for nearly two years prior to the accident on the north side of Kenilworth avenue, about 300 feet east of said tracks. About seven o'clock on the evening in question, Lewin was driving the automobile very slowly in a westerly direction on Kenilworth avenue east of said tracks, and while attempting to cross said tracks a south bound train, going about 25 miles per hour, struck the automobile and wrecked it. Lewin testified that he was aware of the maintenance by defendant of a flagman at the crossing, that he knew there were no gates, that it was dark, that he looked for the flagman's light and did not see it, that he saw no light of an approaching train, that he heard no whistle or other signal immediately before attempting to cross the tracks, and that on account of the shanty he could not see the approaching train until it was right on him, and that almost immediately after the front wheels of the automobile passed upon the track the collision occurred.

A witness named Johnson, called by plaintiffs, testified on direct examination that at the time of the col-

Nelson v. N. W. Elevated R. Co., 170 Ill. App. 119.

lision he was on Kenilworth avenue about 50 feet west of the tracks, that he was looking east, that he saw the automobile east of the tracks and moving toward the west, and also saw the train coming from the north, that the door of the flagman's shanty faces west and that he saw the flagman come out of the shanty and take about two steps when the front end of the motor car went by and the collision took place, that it was not more than a fraction of a second after the flagman stepped out of the shanty before the motor car passed by, that the train consisted of five cars, and before it came to a stop the rear end of the train was south of the south line of Kenilworth avenue, that he went over to where the automobile was, found it wrecked and Lewin partly underneath, that he did not notice any headlight on the train and did not hear any whistle or bell prior to the collision. On cross-examination of the witness, Johnson, it developed, that on January 2, 1909, nine days after the collision, Johnson, at the solicitation of the defendant, went to the office of the claim agent of the company, made a statement as to the collision, which was written out on a typewriter, and that Johnson signed it. This statement was shown the witness and he identified it as signed by him. Two police officers of the city of Chicago, named Gildea and Ausenbaum, also testified on behalf of the plaintiffs, to the effect that at the time of the collision they were standing together on the south sidewalk of Kenilworh avenue about 200 feet west of the tracks, facing the tracks, that they saw the train approaching from the north, saw the lights of the automobile, but did not see anyone with a green lantern in the street, nor any headlight of the oncoming train, nor any flash from any train headlight, nor did they hear any whistle. After the collision they went to where the wrecked automobile was lying and assisted Lewin out from underneath.

On behalf of the defendant, a passenger in the motor car of the train at the time of the collision, the motor-

man of said train, the flagman at Kenilworth avenue, and the flagman at Chase avenue, a block north of Kenilworth avenue, all testified as to their observations at and immediately before the collision. In the view we take of this case, it is not necessary to relate the testimony of these several witnesses. Suffice it to say that their testimony is in marked conflict with the testimony for the plaintiffs as to whether, at the time of the collision, the flagman at Kenilworth avenue was in that street waving a green lantern, or whether the motorman sounded a whistle, or whether there was a headlight burning on the train of the motor car.

Over the objection of counsel for plaintiffs the court allowed the said written statement of the witness, Johnson, to be introduced in evidence as an exhibit, and the entire statement was read to the jury, and it appears that the same was taken by the jury into the jury room when they were deliberating upon their verdict. The statement is quite lengthy and is made up of a statement of certain facts (at variance with the facts as testified to by said witness while on the stand), and of many conclusions and opinions of Johnson. Portions of said statement are that he "could plainly see the electric light on the motor car of the train," that "the head light could be seen plainly from where I stopped," that he "saw the flagman on the sidewalk with his lantern," that "I do not see how any one could help seeing the light of the train if they had looked for it," that "if a person had looked either to the north or south they would have known a train was coming," that "I could see the front end of the motor car from where I was possibly a half block to the north, and I saw the reflection of the headlight before that," that "I think if the man on the automobile had looked for a train he could have seen the light," that "any one at or near the crossing could have seen the reflection from the train's electric headlight and could have heard the train coming, yet the man in the auto seemed to pay no

attention to the light, or to the crossing watchman who I saw standing at the crossing directly south of the watchman's shanty and held a green lantern in his hand,'' that the ''watchman was standing at the crossing before the automobile reached the crossing and before the train reached the crossing,'' that ''while the motorman may have blown his whistle, I did not hear it, I will not say positively that he did or did not blow the whistle,'' and that ''in my position as an uninterested person there was no excuse for the automobile driver not noticing the light from the train, and not noticing the flagman with his green lantern. The motorman of the train had no opportunity to avoid the collision owing to the action of the automobile driver.''

The plaintiffs requested the court, in writing, to give the jury the following instruction, which was refused by the court, and so marked:

''The court instructs the jury that a certain signed statement of the witness, Laurance C. Johnson, has been admitted in evidence in this case; that so much of said statement as states the conclusions of the said witness as to the negligence or want of negligence of the motorman in charge of said train is not evidence of the facts so stated, and you have no right to consider said statement as affirmative evidence of any fact stated therein. It is for the jury to determine what the ultimate facts in the case are without any reference to conclusions of witnesses and from the facts in evidence, and all conclusions, whether made in or out of court, by witnesses are incompetent and must be disregarded.''

Counsel for appellants urges that prejudicial errors were committed by the trial court in connection with this written statement of the witness Johnson, namely, in the character of the cross-examination of said witness thereon allowed by the court, in the remarks of the court and in the remarks of counsel for the defendant in his closing address to the jury relative thereto and in allowing said statement to be taken by the jury into

their room, together with the refusal of the court to give the instruction above mentioned.

Counsel for appellants contends that, while a prior written statement of a witness at variance with his testimony on the trial may under certain circumstances be introduced in evidence, after the attention of the witness has been called to it, for the purposes of *impeachment* solely, such statement cannot be used as *affirmative* evidence, that the record herein discloses that it was so used, and that, where in such a written statement so introduced matters of opinion and of fact are so blended as not to be easily susceptible of separation, the objecting party can have the former excluded from the consideration of the jury by asking an appropriate instruction.

We agree with these contentions, and are of the opinion that at the trial the said written statement was given greater weight, by the rulings of the court and by the actions of counsel for the defendant, than it was entitled to, and also that the court erred in refusing to give the instruction above mentioned. In Central Railway Co. v. Allmon, 147 Ill. 471, 481, it is said:

"It is unquestionably true that, if a witness has simply testified to a fact, his previous opinion as to the merits of the cause cannot be regarded as relevant to the issue. Hence, the questions addressed to him on cross examination with a view of laying a foundation for his impeachment should be directed to matters of fact only, and not to mere opinions which he has formerly expressed; the latter are inadmissible unless the case is one where evidence of opinion is material. * * * If the matters of opinion and fact are so intimately blended in the previous account as not to be easily susceptible of separation, the objecting party can have the former excluded from the consideration of the jury by asking proper instructions to that effect." (See also Gould v. Lead Co., 63 Mass. 338, 347; Lane v. Bryant, 75 Mass. 245, 247; Holmes v. Ander-

son, 18 Barb. 420, 423; Holmes v. Morse, 50 Me. 102, 109).

We are also of the opinion that it was error to allow said written statement to be taken to the jury room. Fein v. Covenant Benefit Association, 60 Ill. App. 274, 276; Johnson v. Fairbank Co., 156 Ill. App. 381, 388.

It is also urged that the trial court erred in giving certain instructions, asked for by the defendant, in that they invade the province of the jury. While some of these instructions do not meet with our approval, we deem it unnecessary to discuss them. For the reasons indicated the judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*