**TRADERS & GENERAL INS. CO. v.
WILSON et al.**

No. 14168.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 31, 1941.

Lightfoot, Robertson & Gano, of Fort Worth (E. B. Robertson, of Fort Worth, of counsel), for appellant.

John W. Culp, of Gainesville, for appellee Gordon Wilson.

Napier & Napier, of Wichita Falls, for appellee W. A. Wilson.

SPEER, Justice.

This is a Workmen's Compensation case, growing out of the death of William Woodrow Wilson from accidental injuries sustained while in the discharge of his duties as an employee of Hipp, Inc.

Deceased was a minor at the time of his death. He left surviving him his father, W. A. Wilson, and a dependent minor brother, Gordon Wilson. The father and minor son sought to recover compensation for the statutory period allowed by law, from Traders & General Insurance Company, carrier of compensation insurance for the employer, Hipp, Inc. Gordon Wilson, the minor, was represented by an attorney ad litem, appointed by the court for that purpose.

The Industrial Accident Board made a final award of $7.79 compensation, payable weekly to the father, W. A. Wilson, for 360 weeks. Denial by the Board was made of any compensation to the child, Gordon Wilson. The insurance carrier gave notice of its dissatisfaction with the award and timely perfected its appeal to the district court of Cooke County, and prayed that a guardian ad litem be appointed to represent the interest of the child and that the award of the Board be set aside, for general relief, including costs of suit.

W. A. Wilson answered with general denial and by cross action for recovery of all the compensation, alleging that his deceased son's average weekly wage rate was $63, fixed, first, by sub-section 1 of Section 1, Article 8309, R.C.S., and alternatively to be fixed by sub-section 2 of said Section 1, and again alternatively under sub-section 3 of said Section of the statute named by us. W. A. Wilson plead and prayed for a lump sum settlement.

An attorney ad litem was appointed by the court for the child, Gordon Wilson, who in turn joined the father in his answer to the carrier's petition, as well also the cross action, alleging his dependency upon his deceased brother for support, and asked for recovery of one-half of the compensation to be allowed.

Funeral directors, who prepared and interred the body of deceased, intervened and prayed for allowance of their bill. No complaint is made of this phase of the case, and we need not devote any further attention to it.

The case was tried to a jury on special issues. Judgment was entered on the verdict that deceased's average weekly wage rate, based on sub-section 3 of Section 1, Article 8309 R.C.S., was $30 per week; that sixty per cent of that wage rate was $18 per week. For the total of 360 weeks, being $6,480, one-half or $3,240, with six

per cent per annum interest from the date of the death of William Woodrow Wilson, was awarded to the father, W. A. Wilson, payable in a lump sum. The judgment divides this recovery by awarding one-third thereof to the attorneys of record.

The other half of the recovery was awarded to Gordon Wilson, the dependent child, in the following manner: $387 covering weekly compensation for the time expired since the death of his brother to the date of trial; to this amount was added $9.46 as interest accrued on the instalments past due; in addition to the amount past due, Gordon Wilson was awarded a weekly compensation of $9 per week (one-half of the total of $18) for the remaining 317 weeks. Motion for new trial by Traders & General Insurance Company being overruled, it has perfected this appeal.

Because of the complications involved when Traders & General Insurance Company appealed to the district court and there it became plaintiff and W. A. Wilson and Gordon Wilson became defendants, and the two Wilsons thereafter became cross plaintiffs and the insurance company a cross defendant, and because of the recovery by the Wilsons and the appeal by the company it became the appellant and the Wilsons are the appellees, we find it difficult to designate the parties in this discussion. We shall therefore refer to them and others when necessary, calling Traders & General Insurance Company appellant, the Wilsons appellees, except when necessary to distinguish between them, and then W. A. Wilson will be called the father and Gordon Wilson will be mentioned as the child or minor son.

The appellant frankly confesses liability for compensation in this case, but, as we understand its briefs and oral arguments, the principal contention is that the recovery was based upon the wrong measure of deceased's average weekly wage rate. This point is presented by its seventh, eighth and ninth propositions, based upon adequate assignments of error. The average weekly wage rate was based upon the jury verdict, which found $30 per week. This finding was in response to special issue 10, which inquired about the rate based upon sub-section 3 of Section 1, Article 8309, R.C.S., commonly referred to as being the amount shown to be just and fair between the parties.

It is not contended by appellant that deceased had worked either for the employer or any other person in similar work for substantially a whole year next prior to the date of his death. But because it appears that he had been employed by Hipp, Inc., at intervals (by the hour aggregating 191 days) during the preceding year and had earned $675, the average weekly rate should have been found to be one 52nd part of $675, viz., $12.98; that any other finding such as that of $30 made by the jury was not just and fair between the parties.

The provisions of the Workmen's Compensation Act by which the average weekly rate shall be calculated, have been before the courts so many times, and quoted at length in numerous decisions, we think it unnecessary to quote them here. Suffice it to say, the rate is to be fixed by one of three methods known as sub-sections 1, 2 and 3 of Section 1, Article 8309, R.C.S. Means employed must be in the order these sub-sections are named. By 1, if the employee has worked for one or more employers in the kind of the work engaged in when injured, for substantially a whole year next preceding the date of the injury (about 300 days, Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553) the annual wage shall be 300 times the daily wage. Under subsection 2, if the employee had not so worked for the time mentioned, then the annual wage rate is to be fixed at 300 times the daily wage of other employees engaged in similar work for substantially a year next preceding the date of the injury, in the same or a neighboring place. By subsection 3, it is provided that if for good and sufficient reasons it is impracticable to fix the rate under 1 or 2, it shall be computed by the Board (or court) in any manner which may seem just and fair to both parties.

The evidence unmistakably discloses that the employer was engaged in cleaning out oil wells and that his work was irregular, not continuous; that when the manager had work to be done during the year next preceding the date of the injury on May 13th, 1939, he employed the deceased to perform certain labors in connection with the job; that when thus called to work by the employer, deceased worked part time as a truck driver at $40 per month; as machine helper he received fifty cents per hour, and as machine operator he re-

ceived seventy-five cents per hour. The time devoted to all of these duties during the year aggregated 191 days. He had worked as machine operator 19 days during the year; he was such operator on the date he received his fatal injuries. Deceased was free to accept employment from other persons during the time he was not employed by Hipp, Inc., and he is shown to have done so during the year, but the number of days he worked for others, or the amount received is not shown.

■ The purpose of the Workmen's Compensation Act is designed to compensate an injured employee, not merely for the loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full time basis. Texas Employers' Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399; Maryland Casualty Co. v. Drummond, Tex. Civ.App., 114 S.W.2d 356, writ refused; Traders & General Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S.W.2d 859, writ refused. We think the rule announced is a correct one and should be followed in arriving at a correct interpretation of the Legislative intent. In this case the deceased unquestionably had the capacity and ability to earn the wages of a machine operator—he was performing that duty when fatally injured. However, with this particular employer, and perhaps with others, deceased could not work full time at that class of labor and of necessity was required to accept less wages at times during the preceding year. But we repeat, his compensation was not for the loss of wages, but for the loss of ability to earn wages (death in this case) when employed on full time basis.

Deceased's income during the preceding year was derived in part from earnings at such labor as he could procure at times when he could not get work as a machine operator. In addition to this, he is shown to have worked in the oil fields for others than Hipp, Inc., during that year. We do not know how much he worked or what he earned, but do know that he had about 109 days in which he was not working for Hipp, Inc. Such earnings for others are not included in the $675 paid by Hipp, Inc., which appellant contends should be divided by 52 to arrive at a just and fair average weekly wage rate.

In Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356, 359, writ refused, the average weekly wage rate was fixed on the "just and fair" rule. In that case the employee was injured while performing common labor at a small wage and attempted to show that in fact he had the ability to perform skilled labor at a much higher wage rate; this was denied him. It was held that to ascertain the just and fair wage rate, the evidence must tend reasonably to establish the capacity of the claimant to earn wages in the same or similar employment to that in which he was engaged at the time of his injury. It was there asserted that the principle announced was not in conflict with the rule in Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488. In the case at bar, deceased was in fact performing the services of a skilled laborer, drawing the wage common to that class of workman, and was classified by his employer at the time as a machine operator. The rate of insurance for compensation is based upon the classification of the laborers covered, and the payroll of the employer covering them. It may be assumed that appellant was receiving insurance premiums based upon the classification of the laborers and the wages paid.

■ It cannot be denied that the Legislature intended that sub-sections 1 and 2 of Section 1 should not be ignored altogether when the rate cannot be fixed thereunder, and resort taken to sub-section 3 for an arbitrary means of fixing the rate. By its provisions it was intended that the Board (and courts) should use their sound discretion in each case and consider what the employee or like employee engaged in the same kind of work in that vicinity did in fact earn at such employment along with any other facts or circumstances shedding light on the subject. Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488; Texas Employers' Ins. Ass'n v. Van Pelt, Tex. Civ.App., 68 S.W.2d 514. Reverting to our foregoing statement referable to the purposes of the Act, to compensate an injured employee for his diminished capacity to earn wages, then the Board (and courts) may take into account in cases like this, the fact that deceased was qualified to earn and was earning, when he met his death, seventy-five cents an hour, and this may be multiplied by the number of hours necessary to make a week under his contract of employment. A calculation upon this basis would be much more than that

allowed by the jury when considering a just and fair rate. We do not lay down the method mentioned as being necessarily the only one to be employed, but because it is persuasive that the average weekly rate of $30 found by the jury was not an arbitrary amount, so excessive as to find no support in the record, as contended for by appellant. We do not believe that the rate should have been fixed by a division of the amount shown to have been earned from Hipp, Inc., by 52 weeks, as the only just and fair means by which the rate could be established, nor do we believe reversible error is shown because this was not done.

■ Appellant's tenth proposition is closely associated with those just discussed. In connection with special issue No. 10, inquiring about a just and fair average weekly wage rate, the court gave this explanation: "In answering No. 10 you may take into consideration any increase in wages William Woodrow Wilson might have reasonably expected under normal conditions." Complaint is made of this part of the charge. The objections to it are: (a) It is a general charge, (b) not a definition of any term used in the charge, and (c) there is nothing involved in the case or any issue as to any reasonable prospects of advancement or increase in wages of the deceased.

The instruction complained of is not a general charge, nor did it necessarily have to be confined to definitions of terms used in the charge. It was such an explanation as the court deemed proper to enable the jury to understand and properly answer the question to which it related. This was not improper. Lee v. Wilson, Tex.Civ. App., 91 S.W.2d 461, writ refused; Fort Worth Sand & Gravel Co. v. Peters, Tex. Civ.App., 103 S.W.2d 407, writ dismissed.

■ Appellant argues that there is nothing in this case to warrant the explanation complained of, that there was nothing in the case to indicate that deceased could have reasonably anticipated any advancement or increase in his wages; that he was receiving the same wages at the time of his death that other men who were more than twenty-one years old were being paid.

Deceased was 18 years old when he was killed; he had been engaged at work in the oil fields of various kinds for about a year and a half. He is shown to have been promoted by his last employer during the year from a truck driver at $40 per

month to a machinist's helper at fifty cents an hour, and from that to operator of the machine at seventy-five cents an hour. This is the price paid all operators in the field. His brother testified that he and Mr. Hipp (the employer) had been training deceased to become an operator and he was doing that work on alternating tours with the witness, prior to his death. His employer testified that deceased was classified as an operator at the time of his death; that deceased was an extra good man, intelligent and took an interest in his work; that he was such a man that would remain and advance in his work.

Article 8306, Sec. 12(i), Vernon's Ann. Civ.St. art. 8306, § 12(i), reads: "If it be established that the injured employé was a minor when injured and that under normal condition his wages would be expected to increase, that fact may be considered in arriving at his average weekly wages and compensation may be fixed accordingly. * * *"

The deceased in this case began work in the oil fields when he was 17 years old; he apparently drew nominal wages as a truck driver. Because of his sterling worth he rapidly progressed within a little over a year to the position of machine operator, drawing a wage of seventy-five cents an hour, and was doing this when killed. He was the type of young man employers delight to find, his employer said he was of type who takes an interest in his work and that of his employer and such as would remain with an employer and advance in his work. This testimony, along with other evidence that deceased had been in training during the year for more skilled labor and advancement, we think raised the issue of whether or not, if he had lived, he could have reasonably anticipated advancement under normal conditions.

However, we think also that there is nothing in the record to indicate that any additional amount was added to the average weekly wage rate found by the jury, as a result of the explanation given by the court. As indicated above, based on the wages being received at the time of his death, his average wage rate would have been much more than that allowed by the jury. See Associated Indemnity Corp. v. Wilson, Tex.Civ.App., 21 S.W.2d 314, writ refused; United Employers Casualty Co. v. Knight, Tex.Civ.App., 139 S.W.2d 613, writ dismissed, correct judg-

ment. In the last cited case the injured employee became 21 pending trial below, and it was shown that he was receiving, from time to time, promotions and advanced wages during his minority. We see no error in the court's charge and the assignment is overruled.

Eleventh, twelfth and thirteenth propositions complain of argument made to the jury by appellees' counsel. We have carefully read the bills of exception upon which the objections are based and are convinced that no harmful error is presented and they are overruled.

First to fourth propositions, inclusive, complain because a lump sum settlement of the recovery by the father was allowed by the jury verdict. These propositions are based upon the insufficiency of the pleadings and evidence to support a judgment in this respect.

■ It is evident to us that the prime object of the Workmen's Compensation Act is to require payment of compensation by the week, unless the liability of the insurance carrier be redeemed as provided by law. Art. 8306, R.C.S., § 18.

By section 15 of the same article it is provided that in death cases, such as this, the insurance carrier's liability may be redeemed. It is there said: "In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association [carrier] * * * to redeem their liability by payment of a lump sum as may be determined by the board."

■ The above provisions apply with equal force to courts when an appeal is perfected from the award of the Board, as provided by the Act. In case of appeal the pleadings of the parties are controlled by the rules of procedure in civil cases. It would unnecessarily extend this opinion to quote appellees' pleadings in this respect. There are allegations to the effect that the father owned no property, was employed at a small salary and is compelled to live in a very cheap boarding house, which makes it undesirable to keep his minor son in such a place. That if his compensation be paid in a lump sum he will be enabled to procure suitable living quarters for himself and child and to engage in a small business of his own, the nature of which is described; that he is familiar with the work connected therewith and will be able to thus support and maintain himself and child, the minor appellee here. He

alleges in the statutory words that to deny him a lump sum award "will work a manifest hardship and injustice" upon him.

The evidence adduced supports the allegations made; it is disclosed that the father is earning from $1.25 to $1.50 per day driving a taxicab; he owns no other property and that none of his other adult children, all now married, contribute anything to his support, or to the support of the child.

The jury answered a special issue finding the facts alleged and proved to be true. Upon this finding the court awarded to the father a lump sum settlement. We think the pleadings sufficient and the evidence supports the verdict. We are not at liberty to disregard the jury's findings on the facts. The assigned error is overruled.

■ This brings us to a consideration of propositions five and six, which we have purposely left for a final discussion. The points raised are that the lump sum award made to the father, W. A. Wilson, was not discounted by the court in the manner and amount provided by law. The contention is well taken. By Article 8306a, Vernon's Ann.Civ.St., it is provided that when the liability of the insurance carrier is redeemed by lump sum payment under order of the court, discount shall be allowed on the total amount awarded in weekly payments, at the rate of six per cent compounded annually.

The award in this case was for compensation to W. A. Wilson, the father, on a basis of $9 per week, for 360 weeks; the total amount aggregated $3,240. Of that time 43 weeks had expired at the date of trial and were due and unpaid. Interest at six per cent per annum being added to the amount due, amounted to $396.46. The remaining 317 weeks at $9 per week discounted at six per cent compounded annually, would make the then present value of deferred payments $2,399.96; this amount added to the $396.46 due on matured payments aggregates $2,796.42, the amount which appellee, W. A. Wilson, should have recovered. No complaint is made of the award to the child, Gordon Wilson, except that the average weekly wage rate was found to be too much. This question we have disposed of against appellant's contention in a previous part of this discussion.

The judgment of the court awarding to W. A. Wilson the sum of $3,240, to be

872

paid in a lump sum, is set aside and judgment here rendered in his favor for $2,796.42, with interest thereon at six per cent per annum from and after February 19th, 1940, the date of judgment entered in the trial court. In all other respects the judgment of the trial court is affirmed. The costs of this appeal will be taxed in equal amounts against appellant and appellee W. A. Wilson.

Judgment of the trial court is set aside and reformed in part, and, as reformed, is affirmed.