## AMERICAN SURETY CO. OF NEW YORK v. RITCHIE.

### No. 2587.

Court of Civil Appeals of Texas. Waco.
June 1, 1944.

Rehearing Denied Sept. 28, 1944.

Malone, Lipscomb, White & Seay, of Dallas, and Naman, Howell & Boswell, of Waco, for appellant.

O'Dowd & O'Dowd, of Waco, for appellee.

TIREY, Justice.

This is a compensation case. Plaintiff has appealed from the final award of the Industrial Accident Board seeking to recover compensation benefits from the American Surety Company of New York, the compensation carrier for his employer, National Gypsum Company. The jury rendered a verdict in plaintiff's favor for 144 weeks' compensation at $20 per week, and judgment was accordingly rendered in his favor against the insurance carrier.

Plaintiff's cause of action was grounded upon an injury he alleged he received on or about November 3, 1942 while in the course of his employment. On the matters pertinent to this discussion the jury found substantially that plaintiff sustained an accidental injury to his body on or about the aforesaid date; that such injury was received by plaintiff in the course of his

employment; that plaintiff suffered an incapacity to work as a result of such injury, and that such incapacity became total on said date for a period of 144 weeks; that he suffered no partial incapacity; that the average weekly wage plaintiff had the capacity to earn as "process inspector," if he had been continuously employed as such for the year elapsing next prior to the day of his injury was $33.80; that plaintiff's incapacity was not caused by an occupational disease.

The sixteenth point assails the court's charge on the definition given of "occupational disease." It was: "You are instructed that the term 'occupational disease', as used in this charge, is one acquired in the usual and ordinary course of an employment, which, from common experience, is recognized to be incidental thereto, and is the usual and ordinary result incident to the pursuit of any occupation, and must, in the nature of things, be the result of a slow and gradual development."

Appellant objected to the court's charge substantially on the grounds (1) that said definition of "occupational disease" is incorrect as applied to the facts of this case in that it requires that the disease must be the result of a slow and gradual development, whereas the evidence tendered is to the effect that the disease may be contracted in a short time, the time element varying according to the person and his susceptibility; and (2) that the language "and must in the nature of things be the result of a slow and gradual development" is a comment on the weight of the evidence and places a greater burden on the appellant than it is required to bear. We sustain these contentions.

It is without dispute that appellee's employment with the National Gypsum Company began on September 29, 1942, and ended on November 8, 1942; that he was employed to work with and around TNT and the incapacity complained of was due to TNT poisoning. Pertinent to this point he alleged substantially that on or about November 3, 1942, while acting in the course of his employment, he sustained an accidental injury, in that at such time he inhaled an unusual amount of TNT fumes as the result of excessive steam pressure. Appellant adduced competent medical testimony to the effect that the length of time in which the disease of TNT poisoning may be contracted "depends on the susceptibility of the patient * * * if we were

going to test him for occupational sensitivity for TNT we would test and in twenty-four hours we would get a result * * * we would test him out for his sensitivity and that would show within twenty-four hours."

Our Supreme Court, in Barron v. Texas Employers Ins. Ass'n, 36 S.W.2d 464, 465, said: "A disease acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto, is an occupational disease and not within the contemplation of the Workmen's Compensation Act, but an injury resulting from accident is something which occurs unexpectedly and not in the natural course of events. It is one which may possibly be prevented by the exercise of due care and caution upon the part of the employer. Schneider on Compensation Laws, p. 419, § 223; Gay v. Hocking Coal Co., 184 Iowa 949, 169 N.W. 360." See also Bonner v. American General Ins. Co., Tex.Civ.App., 139 S.W.2d 204; Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680, writ denied 298 U.S. 655, 56 S.Ct. 674, 80 L.Ed. 1381; Industrial Commission v. Roth, 98 Ohio St. 34, 120 N.E. 172. Immediately following this quoted statement the court says: "A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place and cause. * * * An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development." Under the above holding, we think it is difficult, if not impossible, to define correctly an occupational disease as distinguished from an accidental injury without a correct definition of the latter term. The trial court did not define in his charge the term "accidental injury" as used therein. The court, in his charge, did instruct the jury "that the term 'injury' or 'personal injury' as used in this charge, refers to and means damage or harm to the physical structure of the body, sustained accidentally and such disease or infection as naturally resulted therefrom, or the incitement, acceleration or aggravation of any disease, or bodily defects previously or subsequently existing by reason of such damage or harm to the physical structure of the body." And the court, in the third subsequent paragraph, further instructed the jury that "by the term 'accidentally' as used in this charge,

is meant the happening of an event by chance which takes place unexpectedly not according to the usual course of things, not expected." While the aforesaid terms were thus defined separately, our view is that such separate definitions did not give the jury a legal standard or guide by which the jury could determine whether the incapacity herein complained of was the result of an industrial accident on the one hand, as distinguished from an occupational disease on the other hand. It has been repeatedly held, and so far as we know without exception, that the distinguishing characteristic of an industrial accident or an "accidental injury" is that it can always be traced to a definite time, place, and cause; whereas, a "slow and gradual development" is necessarily a relative term and is usually a distinguishing characteristic of an occupational disease in so far as the origin of an occupational disease is not susceptible of definite ascertainment as to its time, place, and cause. Special Issue No. 1 of the court's charge is: "Do you find from a preponderance of the evidence that the plaintiff, Henry R. Ritchie, sustained an accidental injury to his body on or about the 3rd day of November, A. D. 1942?" It is clear that the court did not give any definition of the term "accidental injury," as used in his charge, and since the appellant adduced competent medical testimony to the effect that the disease, TNT poisoning, may be contracted within a short time, the length of time depending upon the susceptibility of the patient, we have concluded that the court's definition of "occupational disease," wherein he said "and must in the nature of things be the result of a slow and gradual development" is a comment on the weight of the evidence under the record presented and places a greater burden on the appellant than it was required to bear.

Special issue No. 9 of the court's main charge is: "What sum, if any, do you find from a preponderance of the evidence would fairly represent the average weekly wage plaintiff had the capacity to earn as a 'Process Inspector,' if he had been continuously employed as such for the year elapsing next prior to the date of his injury, if any? You will arrive at a solution thereof in any manner that may seem just and fair to both plaintiff and the defendant," to which the jury answered "$33.80." Defendant seasonably objected to this issue substantially on the grounds (1) that neither first subsection 1 nor subsection 2 of section 1 of Article 8309, Revised Civil Statutes, Vernon's Ann.Civ. St. Art. 8309, § 1 subds. 1, 2, is applicable, and that subsection 3 of section 1 of said Article is applicable and controlling; (2) that said issue affirmatively instructs the jury to find what plaintiff's average weekly wage would have been as a process inspector had he been permitted to follow such employment for the entire year next preceding the date of his injury; (3) because the answer to said issue is not made contingent upon the jury having answered any previous issue in any particular manner and hence is a comment on the weight of the evidence; and (4) because under subsection 3 of section 1 of said Article, the jury is required to determine what sum of money they may find from the preponderance of the evidence computed in the manner which they deem just and fair to both plaintiff and defendant that plaintiff would earn during the year prior to November 3, 1942. In connection with said objections the defendant tendered to the court the following issue (which was refused), in lieu of the issue given by the court: "What sum of money, if any, do you find from a preponderance of the evidence, computed in the manner which you deem just and fair to both parties, plaintiff and defendant, was the average weekly wage of Henry R. Ritchie, during the year from November 3, 1941 to November 3, 1942. Answer in dollars and cents." These contentions must be sustained. American Employers Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26, 28; Texas Employers Ins. Ass'n v. Warren, Tex.Civ.App., 149 S.W.2d 182, writ refused. We think that a careful reading of Texas Employers Ins. Ass'n v. Van Pelt, Tex.Civ. App., 68 S.W.2d 514, and Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S. W.2d 488 (Com.App. opinion adopted by Supreme Court) will be sufficient to direct the trial court as to the nature of the proof required, as well as to the proper submission of this issue, and for that reason we have not discussed the testimony tendered as to wages. The issue submitted by the defendant, in our opinion, correctly presents the ultimate issue of fact to be determined by the jury.

For the errors discussed, the judgment of the trial court is reversed and the cause is remanded.