## CONTINENTAL FIRE & CASUALTY INS. CORPORATION v. DRUMMOND et al.

### No. 2852.

Court of Civil Appeals of Texas. Waco.

April 28, 1949.

Rehearing Denied May 26, 1949.

Carter, Gallagher & Barker and R. Guy Carter and Ben T. Warder, Jr., Dallas, for appellant.

Grace & Palmos, Hearne, Ed Burleson, Waco, for appellee.

TIREY, Justice.

This is a compensation case. Robert H. Drummond died from an accidental injury sustained by him while in the course of his employment. His widow, Ruby Drummond, for herself and three minor children, were awarded damages against appellant on the verdict of the jury. The jury found substantially (1, 2 and 3) that Robert H. Drummond sustained fatal injuries on April 7, 1947, at which time there was in existence a partnership between Neatherlin & Yoakum, composed of J. R. Neatherlin and George Yoakum, and that Drummond

was their employee on said date, and that he was in the course of his employment when he received his fatal injuries; (4 and 6) that there was not such an employee of the same class as deceased who had worked substantially the whole of the year immediately preceding April 7, 1947, and that the sum of $44 weekly wage would be just and fair to all parties; (7, 8 and 9) that at the time Robert H. Drummond was injured George Yoakum, Sr., George Yoakum, Jr., John Yoakum, Vernon Yoakum and William H. Yoakum were not moving the Stubbs house as a partnership and that Drummond was not an employee of the partnership composed of George Yoakum, Sr., George Yoakum, Jr., John Yoakum, Vernon Yoakum and William H. Yoakum at the time he was injured, and that at the time Drummond was injured George Yoakum, Sr., J. R. Neatherlin, George Yoakum, Jr., Vernon Yoakum, John Yoakum and William H. Yoakum were not moving the Stubbs house as a partnership; (10) that Drummond was not an employee of the partnership composed of J. R. Neatherlin, George Yoakum, Sr., George Yoakum, Jr., John Yoakum, Vernon Yoakum and William H. Yoakum at the time he was injured; (11) that at the time Drummond was injured George Yoakum, Sr., was not moving the Stubbs house in question as an individual proprietor; and (12) that Drummond was not an employee of George Yoakum, Sr., an individual proprietor, at the time he was injured.

The first four points assail the judgment of the trial court substantially on the grounds (1) that the evidence shows as a matter of law that at the time Drummond sustained his fatal injuries there was not in existence a partnership composed of J. R. Neatherlin and George Yoakum, Sr., (2) that the evidence is insufficient to support such finding, (3) that the evidence shows as a matter of law that deceased was not an employee of such partnership at the time of his injuries, and (4) that the evidence is insufficient to support such finding. We overrule each of these contentions.

We have considered the evidence most carefully under each of the above points and we find that each of the issues complained of was tendered by the evidence, and, in our opinion, is ample to support such findings. We do not believe it would serve any useful purpose to set out the evidence. In 17 Tex.Jur. sec. 410 et seq., pp. 909, 910 and 911, we find this statement: "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." We believe the foregoing statement is an accurate summation of the Texas cases with reference to the point in question and that it is applicable to the factual situation here. See cases collated on the above pages. See also Vol. 4 Tex. Dig., Appeal and Error, ☞930(1), for collation of authorities. Moreover, if there is any evidence of probative value to support a jury verdict, it is the duty of the appellate court to uphold it. See Young v. Fitts, Tex.Civ.App., 183 S.W.2d 186; Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820. It is equally true that when the testimony is conflicting on a question of fact, the appellate court will not disturb the verdict of the jury when there is competent evidence to support the findings; and it is immaterial that the trial judge and the appellate court might have arrived at a different conclusion in passing upon the conflicting evidence. See 3 Tex.Jur. 1096, secs. 768, 769, and authorities there collated. See also Vol. 4, Tex.Dig., Appeal and Error, ☞ 999(1) and 1001(2). See also Insurance Company of North America v. Cangelosi, Tex.Civ.App., 217 S.W.2d 888, points 1–3.

The appellant further contends that the court erred in rendering judgment for appellees because the evidence established as a matter of law that William H. Yoakum, George Yoakum, Jr., Vernon Yoakum and John Yoakum were partners of J. R. Neatherlin and George Yoakum, Sr., in the partnership of Neatherlin & Yoakum, and that since appellants insured Neatherlin & Yoakum, the partnership composed of J. R. Neatherlin and George Yoakum, and since appellant did not in-

sure the employees of the alleged six-man partnership, the appellant would not be liable in this case. It necessarily follows from what we have said that we do not share this view, but if we should be mistaken in our view previously expressed we think that appellant's position is without merit, because it did not plead or prove that its insured, namely the partnership of Neatherlin & Yoakum, was guilty of fraud in withholding the names of all the individuals comprising such partnership and but for such fraud it would not have issued its policy. See Southern Underwriters v. Shipman, Tex.Civ.App., 97 S.W.2d 370, points 1, 2 and 3; Traders & General Insurance Company v. Baker, Tex.Civ.App., 111 S.W.2d 837, points 4 and 5; Fidelity Union Casualty Insurance Co. v. Hammock, Tex.Civ.App., 5 S.W.2d 812, points 1 and 2; Southern Underwriters v. Cooper, Tex. Civ.App., 138 S.W.2d 563, writ dis. cor. judg., points 1 and 2.

Appellant's fifth point is that the court erred in refusing defendant's motion to permit the jury to take into the jury room for use during its deliberations all of the exhibits that were admitted in evidence. This point requires a comprehensive statement.

At the conclusion of the argument and immediately after the jury had gone to the jury room, appellant filed motion to send the following exhibits to the jury room: Appellant's Exhibits Nos. 2 and 3, same being the affidavit of George Yoakum, Sr., and William H. Yoakum, respectively; Appellees' Exhibit "A," same being application for building permit No. 768, signed, Neatherlin & Yoakum by W. H. Yoakum; Appellees' Exhibit No. B, same being Policy No. 11270, Continental Fire & Casualty Insurance Corporation; Appellees' Exhibit No. C, same being weekly payroll sheet from March 29, 1947 to April 5, 1947; Appellees' Exhibit No. D, same being weekly payroll sheet from April 5, 1947, to April 12, 1947. This motion was overruled and appellant seasonably excepted and the court approved the exception with the following qualification:

"1. Exhibit No. 2, being an affidavit of George Yoakum, Sr., and Exhibit No. 3, being a statement of William H. Yoakum,

were offered in evidence by Continental Fire & Casualty Insurance Corporation for the sole and limited purpose of impeachment, and were admitted in evidence by the court for the sole and limited purpose of impeachment, all as is fully disclosed by the Statement of Facts in this case.

"2. At the time such motion was made counsel for plaintiffs objected to defendant's Exhibit 2 (affidavit of George Yoakum) and defendant's Exhibit 3 (Statement of William H. Yoakum) being sent into the jury room because such exhibits were received in evidence for impeachment purposes only, whereupon the court announced that he would send into the jury room plaintiff's Exhibits A, B, C and D but would not send into the jury room defendant's Exhibits 2 and 3. Whereupon cross-defendant Continental Fire and Casualty Insurance Corporation, through its counsel, objected and moved the court that none of the exhibits be sent into the jury room unless all of them were sent in for the reason that if plaintiff's Exhibits A, B, C and D were sent into the jury room and defendant's Exhibits 2 and 3 were not sent into the jury room such action would cause the jury to believe that defendant's Exhibits 2 and 3 were not worthy of consideration by the jury and that the court was withholding such exhibits from the jury and that the jury was not entitled to receive Exhibits 2 and 3 and have them during their deliberation in the jury room and that they could not obtain such exhibits by request. Whereupon cross-defendant, through its counsel, in open court renewed its request that all of the exhibits be sent into the jury room. Whereupon the court advised counsel in open court that in view of the fact that the jury had not requested any of the exhibits and in view of the objections stated by counsel that none of the exhibits would be delivered to the jury. The jury never requested the exhibits, or any of them. The motion of the cross-defendant, through its attorney, was made immediately after the jury filed into the jury room upon the completion of the argument of counsel and the court ruled on such motion within five minutes after the jury had so retired into the jury room.

"3. Continental Fire and Casualty Corporation did not, in connection with said motion, or at any time or in any manner, request that said Exhibits 2 and 3 be sent into the jury room with an instruction, either oral or written, that such exhibits were offered and admitted for impeachment purposes only, and that they could be considered by the jury for that purpose only.

"4. Defendant and cross-plaintiff did not object to sending to the jury room Exhibits A, B, C and D."

Appellant's position is that under Rule 281, T.R.C.P., it is mandatory upon the trial court to send to the jury room upon motion of either party any written instrument or evidence properly admitted during the trial of the case, and it relies upon the cases of Texas Employers Ins. Ass'n v. Applegate, Tex.Civ.App., 205 S.W.2d 412, er. ref. n. r. e.; Bankers Life Co. of Des Moines v. Butler, Tex.Civ.App., 122 S.W. 2d 1077, 1079; Dallas Railway & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222, er. ref. n. r. e; United Employers Casualty Co. v. Smith, Tex.Civ.App., 145 S.W.2d 249, er. ref.; Trinity & B. V. Ry. Co. v. Lunsford, Tex.Civ.App., 183 S.W. 112. Appellant does not cite or discuss Dallas Railway & Terminal Co. v. Orr, Tex.Civ.App., 215 S.W.2d 862.

Let us consider appellant's Exhibits Nos. 2 and 3 first. Appellant's Exhibit No. 2 is the affidavit of George Yoakum, and the pertinent parts thereto are:

"I am 53 years of age, married and live at Rockdale, Texas. I have been in the house moving business since about 1911 in and around Rockdale, Texas. I have three sons, they being George Yoakum, Jr., William Yoakum and Vernon Yoakum. I also have a son-in-law by the name of John Yoakum. About two years ago after my three sons and son-in-law had returned from the service I formed a partnership with them and my son-in-law. There was no written partnership agreement however the agreement provided that I would receive ½ of the profits and my three sons and son-in-law would receive ½ of the profits and they were to split equally their ½ of the profits from each job. It was also definitely understood that in the event we lost money on a job that they would take care of ½ of the losses.

"In the late Summer or early Fall of 1946, I formed a partnership with Ray Neatherlin of Houston, Texas. The purpose of forming this partnership was that on larger jobs it was necessary that I have more experienced men and more equipment therefore I formed a partnership with Ray Neatherlin. There was no written partnership agreement however it was understood that we would split the profits 50-50 and that we would likewise assume 50% of any losses on any job upon which we lost money. It was further understood that I would use my three sons and son-in-law and that Mr. Neatherlin would also have an equal number of employees on the job, that is, if I had four men on my end, he would send four men. Each of us would assume our own payroll. My arrangement with my three sons and son-in-law was that they were partners with me and on any jobs I had through the partnership of Neatherlin & Yoakum, my sons and son-in-law would simply get ½ of my share of the profits. I did not carry them on my payroll at any figure, however, the total amount of Mr. Neatherlin's payroll for four men would be allowed me as expenses which would in turn, of course, revert to my sons and son-in-law in their share of the profits.

"My son, William H. Yoakum, had a brother-in-law by the name of Robert H. Drummond. He lived in Rockdale, Texas. Sometime in March of 1947 William came to me and wanted me to hire Robert Drummond. I was not particularly interested in hiring him, however, I did hire him about April 1st, 1947, when we had a job to do for a man by the name of Gilbert Stubbs of Hearne, Texas, and he began working for us and I was to pay him $1.00 per hour. It was understood that Robert Drummond would work for me and that I would pay his wages. Mr. Neatherlin was, of course, to match him with another man, however, if another man was not needed, Mr. Neatherlin and I would split his wages.

"About the first of April, 1947, I was in the hospital at Temple, Texas, and my son William Yoakum was carrying on for

me. He made a deal for me with Gilbert Stubbs of Hearne, Texas, to move a dispensary building from Prisoner of War Camp near Hearne, Texas, to Hearne, Texas. I needed more men to do this work than my three sons and son-in-law, therefore, I called in Mr. Neatherlin and it was my understanding that this job would be handled under the Neatherlin & Yoakum partnership.

"The arrangements for the split in the profits, the expenses, wages of employees, would operate as set out above.

"One of the reasons that I did not particularly want to hire Robert Drummond was that I did not want to have to pay Social Security on him as I did not have to pay Social Security on my three sons and son-in-law because they were partners in my business and they received ½ of my profits which also was to take care of any wages they might have been entitled to.

"I did not carry a payroll on my three sons and son-in-law and did not report any wages for them as employees for payroll purposes.

"On April 7th, 1947, Robert H. Drummond received injuries that caused his death while working on this job for Mr. Stubbs at Hearne, Texas. I was not present at the time and the only facts I know regarding the accident is what I have heard and what has been told me by other parties.

"I have made and read this affidavit and it is true."

Appellant's Exhibit 3 is the affidavit of William H. Yoakum, and the pertinent parts thereof are:

"My name is William H. Yoakum. I am 28 years of age, married and live in Rockdale, Texas, and receive my mail Box 508. I am a partner in the business of Neatherlin & Yoakum. This firm is only interested in house moving. Members of this partnership are George Yoakum, Sr., George Yoakum, Jr., Vernon Yoakum and John Yoakum, J. R. Neatherlin, and myself. All the equipment we have in Rockdale, Texas is in my father's name, that is George Yoakum, Sr., while the equipment we have in Houston is in the name of J. R. Neatherlin.

"In March of this year we had some moving jobs at the Hearne P.O.W. Camp where we moved some of the buildings of the camp which had been sold into Hearne. At this time we had in our employ R. H. Drummond. I believe his rate of pay was one dollar per hour.

"While working at the camp Mr. Gilbert Stubbs contacted me and I made a deal with him to move a dispensary building from the Camp into Hearne for $300.00 * * *."

"I have made and read this two page statement and it is true to the best of my knowledge and belief."

Rule 281, T.R.C.P., provides: "The jury may take with them in their retirement the charges and instructions, general or special, which were given and read to them, and any written evidence, except the depositions of witnesses, but shall not take with them any special charges which have been refused. Where part only of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded."

■ We think that appellant's contention in this behalf comes within the harmless error rule. In the affidavit of George Yoakum we find these significant statements: "In the late Summer or early Fall of 1946, I formed a partnership with Ray Neatherlin of Houston, Texas. The purpose of forming this partnership was that on larger jobs it was necessary that I have more experienced men and more equipment, therefore I formed a partnership with Ray Neatherlin. * * * About the first of April, 1947, I was in the hospital at Temple, Texas, and my son, William Yoakum, was carrying on for me. He made a deal for me with Gilbert Stubbs of Hearne, Texas, to move a dispensary building from the Prisoner of War Camp near Hearne, Texas, to Hearne, Texas. I needed more men to do this work than my three sons and son-in-law. Therefore, I called in Mr. Neatherlin and it was my understanding that this job would be handled under the Neatherlin & Yoakum partnership." The foregoing statement is consistent with the

928

undisputed record in this case to the effect that George Yoakum and J. R. Neatherlin had, prior to the accident in question, formed a partnership for the purpose of moving houses that were of large dimensions and which required more experienced men and heavier equipment. It is also consistent with George Yoakum's testimony given on the trial of the case to the effect that prior to the accident he had an arrangement with Mr. Neatherlin for him to participate in moving the Stubbs' house, and that he contacted Neatherlin in Houston personally before he got sick. It is likewise consistent with Yoakum's testimony given by deposition and tendered in evidence. It is also consistent with the testimony of Neatherlin tendered on the trial of this case, wherein he testified to the effect that he had known about the Stubbs job prior to April 7, 1947; that he had figured and planned on it; that he had planned to come to Hearne on the job before Drummond died and that his plans were made to go to Hearne just as soon as they called him by telephone. Nor do we find the affidavit of William H. Yoakum in irreconcilable conflict with the affidavit of his father, nor with the testimony tendered by his father or Neatherlin with reference to the Stubbs job. William Yoakum said in his statement that he and the others mentioned in the affidavit were partners in the business of Neatherlin & Yoakum, but whether William Yoakum and the others mentioned were members of the partnership of Neatherlin & Yoakum passed out of the case for the reasons heretofore pointed out. What is important about the affidavit of William is that in it he says that "the firm of Neatherlin & Yoakum had some moving jobs at the Hearne P.O.W. Camp where we moved some of the buildings of the camp which had been sold into Hearne." Therefore, since William, in his affidavit, said that the firm of Neatherlin & Yoakum had a moving job at Hearne, such statement is consistent with the undisputed testimony in this case that there was such a firm of Neatherlin & Yoakum and that they were engaged in the partnership business of moving houses and that when the contract was made to move the Stubbs house it was done pursuant to an agreement with Neatherlin that it was a job to be handled by such firm. Nor do we find the affidavit of William H. Yoakum in irreconcilable conflict with any material testimony given by him on the trial, nor with his deposition tendered in evidence. Since the record is without dispute that Drummond was killed while engaged in furthering the business of his master, and since under the record one of the controlling questions was whether or not the moving of the house in question was a job to be done by the firm of Neatherlin & Yoakum, our view of the affidavits in their entirety is that they were not in irreconcilable conflict with the pertinent testimony tendered in this cause. Moreover, George and William Yoakum each testified on the trial at length and in detail with reference to the signing of the respective statements and each material portion of the statements was read to them at the time they were so testifying and they admitted making the statements therein contained and admitted signing the same. The deposition of each of them was tendered on the trial and they are substantially to the same effect. Each affidavit was admitted in evidence for impeachment purposes only and each of the affidavits was read in full to the jury at the time they were so admitted. Such affidavits are consistent and corroborative of the material and controlling issues. It is our view that the affidavits are cumulative evidence of the undisputed facts adduced on the trial and, so believing, we think that the failure of the trial court to send the affidavits to the jury room comes squarely within the rule announced by our Supreme Court in Dallas Railway & Terminal Co. v. Orr, 215 S.W.2d 862, points 3-5. We believe that the cases relied upon by appellant and heretofore cited are easily distinguishable from the case at bar and for that reason it would serve no useful purpose for us to discuss them and would unduly extend this opinion. We also think they are distinguishable from the case of Dallas Railway & Terminal Co. v. Orr, but if we are mistaken in that behalf, then they are in conflict with the Orr case and it is our duty to follow our Supreme Court. We are of the further view that appellant's complaint comes squarely

within the provisions of Rule 434, T.R.C.P. See also 64 C.J. p. 1027, sec. 818; McMahon v. Iowa Ice Co., 137 Iowa 368, 114 N.W. 203; Nordhaus v. Marek, 317 Ill. App. 351, 45 N.E.2d 993; Hraha v. Maple Block Coal Co., 154 Iowa 710, 115 N.W. 406; Johnson v. N. K. Fairbank Co., 156 Ill.App. 381; Fein v. Covenant Mutual Benefit Ass'n, 60 Ill.App. 274.

We think the exception shows that appellant waived its motion to send appellees' exhibits A, B, C and D into the jury room. If we are in error in this position, then we think that appellant suffered no harm from the court's failure to send these last exhibits to the jury room since they consisted of (A) application for permit to move the Stubbs house signed, Neatherlin & Yoakum by William H. Yoakum, (B) the insurance policy written by appellant; and (C and D) weekly payroll sheets showing the deceased as an employee of the partnership firm of Neatherlin & Yoakum. Since these exhibits were undisputed and tendered in evidence and read to the jury and were not in conflict with any other evidence tendered in the case, the action of the court complained of comes within the harmless error rule as above stated.

Appellant's sixth point is that the court erred in submitting to the jury Special Issue No. 6, as follows: "What sum of money, if any, do you find from a preponderance of the evidence to be the average weekly wage of Robert H. Drummond, which would be just and fair to both the cross-plaintiff and the cross-defendants in this suit?" Appellant seasonably objected to this issue substantially on the grounds: (a) That it did not limit the jury in its inquiry to a consideration of the work that deceased performed during the year immediately preceding his injury, nor did such issue limit the jury to a consideration of the actual earnings of the deceased during the year immediately preceding his injuries; (b) that said issue assumed that deceased worked as a house-mover during the entire year preceding his injury and that all of his work immediately preceding the injury was house-moving work, when the undisputed evidence is that part of his work was vegetable peddling at which he earned only $15.00 per week; and (c) that such issue did not limit the jury in its consideration of what would be fair and just to both parties as to what the deceased did earn during the year just prior to his injury. In connection with these objections appellant submitted the following special issue, which was refused: "What sum of money, if any, do you find from a preponderance of the evidence, computed in the manner you deem just and fair to both parties plaintiff and defendant, was the average weekly wage of Robert H. Drummond, deceased, during the year from April 7, 1946 to April 7, 1947?" The only testimony adduced on wages that the jury was authorized to consider under the ruling of the court was substantially to the effect that during the year from April 7, 1946 to April 7, 1947, Drummond lived in Rockdale, Texas, and worked only about four months during such year; that when he was laid off at the Brown Shipbuilding Company in February, 1945, he did not do any work after he left that company until he had a vegetable peddling job in the summer of 1946, and that during the summer of 1946 he averaged $15.00 per week; that after that he went to work for a Mr. Greenwood moving houses and for this work he received $1.00 an hour and worked eight hours per day six days a week. He had been in the employ of his master for a few days only at the time he was injured, and for this labor he was paid $1.00 per hour.

Article 8309, Vernon's Ann.Civ.Stats., relates to and is controlling as to the average weekly wage of an injured employee. The construction of this statute was before our Supreme Court in Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488, 490, opinion by Com.Apps., adopted by S.Ct. After discussing the article the opinion said: "A reading of this subdivision will disclose that it is very general in its provisions as to what shall be taken into consideration by the board in computing the average weekly wage thereunder. It simply provides that the average weekly wage thereunder 'shall be computed by the Board in any manner which may seem just and fair to both parties.' Under such provision no hard and fast rule can be announced that will govern the board in all

instances. The statute clearly intends to clothe the board with broad discretionary powers in considering matters that bear on the question to be determined. The board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier." In Texas Employers Ins. Ass'n. v. Clack, Com. Apps., opinion adopted by Supreme Court, 134 Tex. 151, 132 S.W.2d 399, 401, point 4, we find this statement: "One of the underlying purposes of our compensation statute is to compensate an injured employee, not merely for loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full time basis." Appellant relies on the opinion of this court in American Surety Co. v. Ritchie, 182 S.W.2d 501, er. ref. w. o. m., and other cases, to sustain its contention. It is true that our Supreme Court said the disposition made of the Ritchie case by this court was correct, but it went no further, and we are still of the opinion that the charge given by the trial court in the Ritchie case was in conflict with the rule announced by our Supreme Court in the Bulis and Clack cases. But notwithstanding the statement made by this court in the Ritchie case as to a proper charge on a second trial, it is our duty to follow the rule announced in the Bulis and Clack cases aforesaid, and for that reason we hold that the charge given by the trial court in this cause is in conformity with the rule announced in the Bulis and Clack cases, and therefore appellant's sixth point is overruled. Nor do we think the charge given was a comment on the weight of the evidence. See also: 45 T.J. p. 664, sec. 215; Texas Law Review, Vol. 18, page 365; Federal Underwriters Exchange v. Rattler, Tex.Civ.App., 192 S.W.2d 942, point 1, writ ref. n. r. e.; Traders & General Ins. Co. v. Locklear, Tex.Civ.App., 119 S.W.2d 153, points 8 and 9, writ dis., Traders & General Ins. Co. v. Wilson, Tex.Civ.App., 147 S.W.2d 866, points 1–3; Aetna Casualty & Surety Co. v. Davis, Tex.Civ.App.,

196 S.W.2d 35, point 6; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W. 2d 356, points 2–6, writ ref.; Postal Mutual Indemnity Co. v. James, Tex.Civ.App., 154 S.W.2d 148, point 1, writ ref. w. m.; Texas Employers Ins. Ass'n v. Bateman, Tex. Civ.App., 252 S.W. 339, points 1 and 2; Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 93 S.W.2d 1180, writ. dis.

Appellant's eighth point is to the effect that the court erred in defining the term "partnership" in its charge to the jury. The court defined it as follows:

"By the term 'partnership', as used in this charge is meant a relationship between two or more parties where there is a common enterprise and a community of interest therein, a prosecution of the common enterprise for the joint benefit of the parties; and a right of each of the parties, to participate to some extent in the profits, as such, and an obligation of each of the parties to bear some proportion of the losses, if any, sustained in the business."

The defendant seasonably objected to this definition substantially on the following grounds: (a) That it did not inform the jury that in order for it to be a copartnership there must be a contribution by each of the two or more persons constituting the partnership of either property or services for the joint and mutual benefit of the parties; (b) that such definition was unintelligent and confusing to the jury in that it used the term "to participate to some extent in the profits as such" and did not apprise the jury as to the term "as such" and led the jury to believe that in order for there to be a partnership, each party must have the right to immediately take out and withdraw his profits or his share of profits, if any, from the partnership, which was an erroneous statement of the law of partnership to the jury. The defendant also tendered to the court the following definition:

"By the term 'partnership', as that term is herein used, is meant a combination of two or more persons joined together to carry on a trade or business, for their common benefit, to which each person con-

tributes property or services and shares in the profits and losses, if any, arising in such trade or business."

We overrule appellant's contentions in this behalf. We believe the definition given by the trial court meets the test pointed out by this court in Southern Surety Co. v. Texas Employers Ins. Ass'n, Tex.Civ.App., 2 S.W.2d 310, points 1-4, writ ref. If we should be mistaken in this behalf, we think that appellant failed to point out how such error injured it and we think if it should be held that the definition was erroneous, that such error comes clearly under the harmless error rule as stated in Rule 434, T.R.C.P.

Finding no reversible error, the judgment of the trial court is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.