SLAUGHTER et al. v. LA COMPAGNIE FRANCAISE DES CABLES TELEGRAPHIQUES.

(Circuit Court, S. D. New York. January 4, 1902.)

1. CONTRACTS—BREACH—NOMINAL DAMAGES—SPECIFIC PERFORMANCE—FORMER JUDGMENT—BAR.

Where, in an action for specific performance of a contract to lease telegraph lines, the bill alleges that an action at law was brought on the contract, which resulted in a judgment for plaintiffs against defendant sustaining the contract and for nominal damages, such judgment is not necessarily an absolute bar to a decree for specific performance, though a judgment for substantial damages might be.

2. SAME—SPECIFIC PERFORMANCE—OBJECT OF CONTRACT—MUTUAL BENEFIT.

A contract recited that defendant owned an Atlantic cable and certain land telegraph lines, and desired to obtain a larger percentage of the telegraph traffic between the United States and Europe, and that plaintiffs intended to establish a new telegraphic system throughout the United States, and desired to obtain control of defendant's land lines. It then provided for a lease of such land lines to plaintiffs on certain work being done within a specified time, and an interchange of business and office facilities, there being no other consideration for the lease. *Held* that, in the absence of a showing that plaintiffs have established any lines or offices in the United States, and are in a position to receive or confer any benefits from the interchange of traffic contemplated by the lease, specific performance should not be decreed.

In Equity.

C. Walter Artz, for plaintiffs.
Edward K. Jones, for defendant.

WHEELER, District Judge. This bill is brought for specific performance of a contract dated July 14, 1896, between the plaintiff Slaughter and others to be thereafter associated with him, called "parties of the second part," and the defendant, called the "party of the first part," for a lease of its land lines between New York, New Haven, Hartford, Providence, Taunton, and the landing place of its cable for 99 years, which recites:

"Whereas, the Compagnie Francaise des Cables Telegraphiques, hereinafter designated as 'party of the first part,' desires to obtain a larger percentage

of the telegraph traffic between the United States and Europe; whereas,. certain persons hereafter designated as 'parties of the second part' intend to establish a new telegraphic system throughout the United States; whereas, the said parties of the second part are desirous of obtaining control of the land lines and franchises, rights, etc., as now in possession of the Compagnie Francaise des Cables Telegraphiques, party of the first part; whereas, it will be to the mutual advantage of the parties hereto to so agree that the cables and franchises and European offices of the party of the first part may be used in connection with the land lines, franchises, and American offices of the parties of the second part: Therefore it is agreed between the parties hereto, as follows."

—And provides for the execution of the lease upon the fulfillment of either of these conditions:

"That the said parties of the second part shall within forty-five (45) days from the date of the execution of this agreement begin work on the repairs necessary to place the telegraphic lines which are the subject of this agreement in condition to be used during the coming fall and winter months, and vigorously prosecute the said work to its completion, said work to be performed under the direction of the party of the first part, and not to cost more than ten thousand dollars. Upon the termination of the said work to the satisfaction of the party of the first part, the condition required shall be considered fulfilled, and the lease herein mentioned shall be executed and delivered. At the option of the parties of the second part they may pay the sum of ten thousand ($10,000) dollars to the party of the first part, which sum shall be expended by the said party of the first part in making the said repairs. On payment of the above mentioned sum of ten thousand dollars ($10,000) the conditions required shall be fulfilled, and the lease herein mentioned shall be executed and delivered."

And the contract further provided:

"Fifth. That this agreement shall be null and void unless within forty-five (45) days from the date of its execution the parties of the second part commence the work of repairs as herein provided, and within forty-five (45) days from its execution pay to the party of the first part any sum expended or agreed to be expended not to exceed the sum of five thousand ($5,000) dollars in the repairs herein contemplated."

The lease was to provide:

"That when the parties of the second part shall be duly established with lines and offices throughout the United States they will give exclusively to the party of the first part the messages coming to its offices from Europe or elsewhere, which can reach their destination over the cables of the party of the first part; and the party of the first part will recipr. cally give to the parties of the second part all traffic coming by its cables for points reached by the lines of the parties of the second part."

No rent was, or was to be, provided for, and the advantages to accrue to the parties respectively were such as might arise from this interchange of traffic. The bill sets out the option, and alleges:

"(4) That subsequent to said 14th day of July, 1896, the said William H. Slaughter associated with himself individuals, your orators herein, and on information and belief that on or about the 28th day of August, 1896, duly tendered the sum of ten thousand dollars ($10,000) to the defendant in conformity with the provisions of said contract, and in the exercise of the option above referred to."

—without alleging that the plaintiffs had commenced the work of reconstruction, or that the defendant had done so for them under the contract, or that this tender was made within the 45 days, or that the plaintiffs have in any manner become established with lines

and offices throughout the United States, or any part thereof, from which any advantages by the interchange of traffic contemplated could accrue to the defendant. The bill alleges that an action at law was brought in this court upon the contract, which resulted in a judgment on a verdict for the plaintiffs against the defendant sustaining the contract, and for nominal damages. This may conclusively show that the contract was not avoided by the failure to begin work or to exercise the option and pay or tender the $10,000 within the 45 days; but, if so, it also shows that the plaintiffs suffered no appreciable actual damages from the failure of performance that could be compensated for in money. The defendant relies upon this as an absolute bar to a decree for specific performance. The recovery of substantial damages for a breach of the contract might operate as such a bar to enforcing it as a whole, but the recovery of nominal damages might not. However that may be, that judgment covers all damages at law accrued to that time. Specific performance is not a matter of strict right, but of sound discretion; the contract should be one that can reasonably be carried out, and the party seeking that it be carried out capable of carrying it out. Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955. Without any lines and offices in the United States to receive or confer any benefits from the interchange of traffic contemplated by the lease, the plaintiffs do not appear to be so situated as to be capable of carrying out the lease, or to have any ground, in equity, for asking that the making of the lease be compelled.

Demurrer sustained.