WINSTON v. BROWN et al.

(Circuit Court of Appeals, Fifth Circuit. January 11, 1918.)

No. 3073.

1. EQUITY ⬤⟶66—MUTUALITY OF REMEDY—EQUITABLE MAXIMS.

The duty of specific performance, which courts of equity enforce, is a reciprocal one, and the maxim, "He who seeks equity must do equity," is peculiarly applicable; therefore specific performance will ordinarily be refused in favor of a party against whom specific performance of his obligations under a contract is for any cause impossible.

2. SPECIFIC PERFORMANCE ⬤⟶13—POSSIBILITY OF PERFORMANCE—DENIAL.

Specific performance of a contract to exchange lands for certain other property, which obligated the defendants to assume mortgages on the lands they were to receive, will not be granted, where at the time of rendition of the decree mortgages on the lands which complainant was to transfer had been foreclosed, and he had lost all rights therein; it being purely a question of surmise whether, if defendants had complied with their agreement to pay interest on the mortgages, foreclosure could have been avoided.

Appeal from the District Court of the United States for the Western District of Texas; Gordon Russell, Judge.

Suit by William C. Winston against Orson P. Brown and others. From a decree for defendants, complainant appeals. Affirmed.

William C. Reid and James M. Hervey, both of Roswell, N. M., for appellant.

A. H. Culwell, of El Paso, Tex., for appellees.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. The appellant, William C. Winston (who will be called the plaintiff), by bill filed on the equity side of the court, sought the specific performance of a contract entered into in March, 1913, between him and the appellee, Orson P. Brown (who will be called the defendant). That contract embodied the following features or

provisions: The plaintiff agreed to convey or have conveyed to the defendant three tracts of land in New Mexico, one a 250-acre tract near Dexter, known as the "Macey Place," upon which there was a mortgage securing a note for $8,000 and interest, payable to a third person, another a 200-acre tract, part of a place known as the "Joe Carper Place," upon which there was a $4,500 mortgage, embracing the 200 acres and other land, and the third a 300-acre tract; to furnish an abstract of title showing merchantable titles to the properties to be conveyed; to pay the interest on the two mortgages mentioned to the date of the contract; to assume $2,700 of the $4,500 mortgage indebtedness; and to assume and pay a $3,200 note made by the defendant to the Bank of Douglas. In consideration of the agreements of the plaintiff the defendant agreed to transfer to the plaintiff shares of stock in a named Mexican corporation, representing and entitling the defendant to 50,504 acres of land in the state of Chihuahua, Mexico, to assume the $8,000 mortgage and $1,800 of the $4,500 mortgage, and to execute a $1,600 note to the plaintiff, to be secured by a mortgage on the 250-acre tract, and to be due at the same time the $3,200 note to the Bank of Douglas was due. The contract stated that the valuations at which the defendant was to receive the two mortgaged tracts were $35,750 and $20,-000, respectively, and that the valuation at which he was to receive the other tract was $8,000. Neither the $8,000 mortgage nor the $4,500 mortgage was paid by the plaintiff or the defendant, and each of those mortgages was foreclosed, and the land covered thereby was bought at the foreclosure sales by strangers to this suit. At the time the decree dismissing the plaintiff's bill was rendered, the plaintiff could not convey title to either of those tracts. It is not claimed in his behalf that, after the foreclosures, he had any interest or estate in the lands so sold, or any right to redeem or reacquire them.

[1] It is apparent from the above statement that, at the time the decree appealed from was rendered, the specific enforcement of the contract, in so far as it imposed obligations upon the plaintiff, was impossible. The foreclosures mentioned deprived the plaintiff of the power to do the things he undertook to do in consideration of the undertakings of the defendant, which are sought to be specifically enforced. A result of granting the relief prayed would be that the plaintiff would get the property for which he traded, while the defendant would fail to get the greater part in value of that which he was to receive in the exchange contracted for. The duty of specific performance, which courts of equity enforce, is a reciprocal one. The maxim, "He who seeks equity must do equity," is peculiarly applicable where one party to a contract asks that another party thereto be coerced to perform specifically. The general rule is to refuse such relief in favor of a party against whom the specific performance of his obligations under the contract is, for any cause, impossible. Ordinarily a party will be left to his remedy at law, where the circumstances are such that only a fragment of the contract in question is capable of specific performance. Brashier v. Gratz, 6 Wheat. 528, 5 L. Ed. 322; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Holgate v. Eaton, 116 U. S.

33, 6 Sup. Ct. 224, 29 L. Ed. 538; Slaughter v. La Compagnie Française des Cables Tel. (C. C.) 113 Fed. 21.

[2] In behalf of the plaintiff it is contended that, the contract having been capable of performance on both sides when, by its terms, performance was due, the fact that the plaintiff's inability to perform was a result of the defendant's default brought the case within a recognized exception to the rule above stated. Assuming the existence of such an exception, we think a sufficient answer to the contention is that it was not made to appear that the plaintiff's loss of two of the three properties the defendant was to get was due wholly to the latter's default. The contract did not obligate the defendant to do all that was required to make it sure that the two mortgages mentioned would not be foreclosed. The plaintiff agreed to pay the interest which had accrued on the mortgage debts at the date of the contract, and to take care of $2,700 of the $4,500 principal secured by one of the mortgages. Each of the mortgages would have remained subject to foreclosure, even if the defendant had complied with his obligations with reference to them. It would be mere surmise to conclude that performance by the defendant would have enabled the plaintiff to comply with his obligations under the contract, and would have insured his doing so, or that the holders of the mortgages would have insisted on the foreclosure of them if the plaintiff had paid the interest accrued at the date of the contract, though the subsequently accruing interest and the principal were not promptly paid. The conclusion is that the existence of some ground for conjecturing that the foreclosures might not have occurred if the defendant had complied with the obligations imposed upon him by the contract—this being as much as the evidence properly can be regarded as disclosing—is not enough to make inapplicable to the case the general rule that the kind of relief which is sought is denied to a plaintiff who is unable to perform his part of the contract.

Discussion of other disclosed facts that might be relied on to support the action of the court in dismissing the bill is not deemed necessary. The decree is affirmed.