Paige B. BAYOUD, Appellant,

v.

H. R. NASSOUR, Jr., Appellee.

No. 15953.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 5, 1958.

Rehearing Denied Jan. 9, 1959.

Shields, Jones, Whittington & Chandler, and Charles O. Shields, Dallas, for appellant.

Waller M. Collie, Jr., Dallas, for appellee.

MASSEY, Chief Justice.

Doctors Bayoud and Nassour were formerly partners in the operation of a clinic in Dallas County. Difficulties attended culminating in a dissolution of their partnership. There was a contractual agreement of dissolution entered into as incident to a suit between them, and this contract was made a part of a judgment decree in settlement of the controversies existent between the parties at that time.

Afterward, however, further controversies arose. Basically, their subsequent disputes arose through a disagreement over the proper construction of the contract of partnership dissolution.

When the partners operated their clinic the system of procedure included the posting of a complete obstetrical charge on the books at the time an expectant mother first became a patient. It is believed that this procedure is not at all unusual, in that it affords expectant parents the opportunity to make monthly or bimonthly payments on the contractual fee to the end that all medical services might be paid by the time their baby is delivered. Such payments were placed on the books as credits against the fee debited for the delivery of the baby plus the prenatal and postnatal care of the mother. For other work of the doctors the records were posted as the services were performed, hence, except for the obstetrical patients the books reflected charges only for work which had been performed. As to the obstetrical patients, however, the books reflected charges for prospective services as well as for those already performed.

Pursuant to the partnership dissolution Dr. Nassour retained the physical premises, continuing to operate the clinic as an individual. Dr. Bayoud moved to a new location. Some twenty-two obstetrical patients "followed" him to his new location. All had been patients of this doctor while the partnership was in existence and their names were on the books of the clinic, which books reflected the charges contracted upon for the delivery and the prenatal and postnatal care. As to some of these patients the books reflected charges for services performed other than obstetrical.

It was Dr. Nassour's interpretation of the dissolution contract and judgment that he was entitled to be paid, or to receive credit for payments made to Dr. Bayoud, on these twenty-two accounts as applied to the anticipatory obstetrical services. His interpretation was further to the effect that as collections were made the total thereof would be retained in a fund being accumulated from the collection of all accounts receivable until the total sum of $10,000 had been received and turned over to Dr. Bayoud,—with the ownership of the excess in collections to become the sole property of Dr. Nassour.

It was Dr. Bayoud's interpretation of the dissolution contract and judgment that he was entitled to be paid said $10,000 by Dr. Nassour exclusive of the amounts not yet collected (as of the time of partnership dissolution) from these obstetrical patients. Dr. Bayoud understood the contract and judgment incident to partnership dissolution to give him the exclusive right to these patients, as obstetrical patients, with entitlement to be paid by them for the obstetrical services wholly without relation to the dissolution and with no credit to be made against the $10,000 he was to get under the dissolution contract.

■ There is no necessity here to detail the terms of the dissolution contract and judgment. It will suffice to say that it was subject to construction upon fact findings made. Such findings and such construction fell within the province of the court upon the trial without a jury. The evidence would support either interpretation. The construction in this instance was in accord with Dr. Bayoud's theory.

Pursuant to his interpretation of the partnership dissolution contract and judgment, Dr. Nassour proceeded to bill the obstetrical patients who "followed" Dr. Bayoud. The statements sent showed that he, or his clinic, was charging each of them the entire balance showed by the records to be owing for the obstetrical care already performed by Dr. Bayoud, and for which payment had not yet been received, plus a charge for the services being rendered each patient after the latter named physician had moved to his new location. Understandably, some of the obstetrical patients were dismayed, particularly when they were informed by Dr. Bayoud that he expected them to pay him "direct". There was evidence in the record that Dr. Bayoud informed some of his patients that he would not appear when time came for their babies to be delivered if they did not pay him. These same patients were informed by Dr. Nassour that the money was owed to him and steps would be taken to enforce payment if he was not voluntarily paid. The record reflects that some patients secured new doctors and eliminated involvement in the controversy. In such instances, at least, one or the other if not both parties to the dispute suffered financially through the loss of patients.

Upon the occurrence of the foregoing developments Dr. Bayoud filed suit against Dr. Nassour for injunction. He also prayed for a temporary restraining order to stop the billing of patients by Dr. Nassour, including the billing of his obstetrical patients. On November 8, 1956, an order was entered temporarily restraining the latter named physician from "mailing statements to any cf Plaintiff's (Bayoud's) patients whose names appear in the accounts receivable as of September 27, 1956; * * *." The temporary restraining order was made operative until a hearing ordered for November 15, 1956, on which date Dr. Nassour was to "show cause" why a temporary injunction should not be decreed. It is to be noted that the above period was seven (7) days.

The record does not disclose what, if anything, transpired on November 15, 1956, but there was no order entered in relation to the suit for injunction on said date, nor no nunc pro tunc order later entered "as of said date". However, on November 16, 1956, an order was entered of record in the cause entitled "Order Amending Fiat Granting Temporary Restraining Order". This order purported to amend the fiat granting the temporary restraining order under date of November 8, 1956, so that Dr. Nassour was restrained from "mailing statements to any of Plaintiff's obstetrical patients whose names appear in the accounts receivable as of September 27, 1956". In this same order it was recited: "It is further Ordered, Adjudged and Decreed by consent and on application of the Defendant that the hearing on such Temporary Restraining Order be continued until 9:00 o'clock A.M., Friday, November 23, 1956, and that the said Temporary Restraining Order as above amended continue in effect."

It is indicated from the record that nothing transpired in this case on November 23, 1956, and in any event no purported order was entered by the court in the continuance of the restraint imposed by either the order of November 23, or the earlier order of November 8.

On February 14, 1957, at the instance of Dr. Bayoud, Dr. Nassour was cited for contempt. He was ordered to appear and show cause why he should not be punished as for contempt for hs conduct in sending statements to patients named, etc. This was not heard until March 13, 1957, when it was considered along with Dr. Bayoud's suit for injunction. At this hearing the trial court entered an order which dismissed the restraining order issued on November 8, 1956, the restraining order issued on November 16, 1956, denied the petition seeking to have Dr. Nassour held in contempt of court, and denied the temporary injunction. Thus did the action below purport to dispose of the interlocutory matters here involved.

Thereafter came the trial on the merits of the controversies between the parties. The suit, as material to the appeal before us, involves the cross-action of Dr. Nassour on which he was decreed a recovery in damages. By this judgment the construction of the partnership dissolution contract was made as heretofore mentioned, plus a finding of accrued damages on account of the temporary restraining order procured by Dr. Bayoud on November 8, 1956, and on account of the order amending the same procured by the same party on November 16, 1956. Added thereto was a finding of accrued damages on account of Dr. Bayoud's wrongful appropriation of Dr. Nassour's charts and records as to patients and a refusal to grant the latter access thereto.

The statement of facts discloses that as to the damages awarded because of the temporary restraining orders aforementioned all the evidence thereon was as to the total "lump figure" damages accrued between November 8, 1956, and the date when the case went to trial, which to the best of our ability to determine was May 27, 1957. Dr. Nassour obeyed the prohibition of the order of November 8, 1956, to date of the purported amendment of November 16, 1956, and the prohibition of the amendment to time of the trial. Correctly believing he was restrained wrongfully by the orders, he erroneously believed that he was restrained continuously.

■ We believe that Dr. Nassour was restrained only by the order of November 8, 1956, and that he ceased to be restrained on November 15, 1956, the time set for the hearing. When no order was entered on or as of that date the order expired and became functus officio. Ex parte Rains, 1923, 113 Tex. 428, 257 S.W. 217, and cases following to be noted in Shepard's citations. The order of November 16, 1956, purporting to amend the order of November 8, 1956, did not have the legal effect of amending said order. We consider the matter jurisdictional, and since there was no re-entry of the defunct order, no entry of a new order, and no nunc pro tunc entry of an amendment, the effective date of the order of November 8, 1956, was not extended.

It follows therefore that such damages as were wrongfully occasioned to Dr. Nassour as the result of the order of November 8, 1956, began to accrue on the date the "show cause" order was served on him and ceased to accrue after the date for which the hearing was scheduled and named therein, November 15, 1956. This resulted in view of the provisions of Texas Rules of Civil Procedure, rule 680, "Temporary Restraining Order". See Corpus Christi Linen Service v. Wright, Tex.Civ.App., San Antonio, 1953, 255 S.W.2d 324, and Federal cases cited.

■ In this case there is no way we could "break down" the damages assessed so as to award Dr. Nassour the amount to which he was truly entitled as the court was able to do in the case of Corpus Christi Linen Service v. Wright, supra. We are compelled to decree a remand of this part of the case in order that it can be tried under a proper theory as to the period for application of the measure of damages in this respect.

We have examined Dr. Bayoud's remaining points of error and have concluded that they must be overruled. No reason appears which would warrant their discussion.

■ ■ We have reached the conclusion that the case as it is related to the accrued damages on account of Dr. Bayoud's wrongful appropriation of the charts and records should likewise be remanded. In considering reversal in part the test of severability is whether or not the issues in the case are indivisible, or so closely related that a jury or other trier of the facts should in all fairness have the entire case before it in reaching the decisions to be made on the issues involved. In view of our belief in this principle, we are of the opinion that the entire case should be before the responsible body in the retrial. T.R.C.P. 434;

3–B Tex.Jur., p. 532, "Appeal & Error", sec. 978, "Severability of Judgment or Issues"; Fisher v. Coastal Transport Co., 1950, 149 Tex. 224, 230 S.W.2d 522.

Judgment reversed and cause remanded.