**Clarence W. BURR, Appellant,**

v.

**Roy GREENLAND et ux., Appellees.**

**No. 5504.**

Court of Civil Appeals of Texas.

El Paso.

March 14, 1962.

Rehearing Denied April 25, 1962.

Hill & King, James D. McKeithan, Mission, for appellant.

Strickland, Wilkins, Hall & Mills, E. G. Hall, Mission, for appellees.

LANGDON, Chief Justice.

Appellees, Roy Greenland and wife, Betty Jo Greenland, brought suit in the District Court of Hidalgo County against Clarence W. Burr, based on an alleged oral partnership agreement. In the suit appellees sought to establish not only the ex-

istence of a "partnership", but also to enforce an alleged parol agreement to terminate the partnership based upon an offer, allegedly made by Burr, to withdraw from the partnership if he (Burr) could get back what he had invested in the partnership. In the alternative, appellees prayed that an accounting be had between the parties; that the property and machinery belonging to the partnership be sold; that the indebtedness against such property, as well as the amount invested by each partner, be paid out of the proceeds of such sale; and that the remaining proceeds be divided between the parties, fifty per cent thereof to Clarence W. Burr and fifty per cent to appellees, Roy Greenland and wife, Betty Jo Greenland.

The case was tried to a jury, and upon answers favorable to appellees, the trial court entered judgment that a partnership existed; decreeing such partnership to have been dissolved by mutual agreement as of August 1959; specifically ordered the defendant, Clarence W. Burr, to carry out the terms of the alleged parol agreement to withdraw from the partnership, and to accept the sum of $40,575.00 (found by the jury to be the amount in dollars and cents, in cash and in the fair cash market value of property, invested by Burr in the partnership up to and including August of 1959, in full and final payment and satisfaction of his interest in the partnership and its assets; and further specifically decreed that upon payment of such sum by the Greenlands into the registry of the court, together with proof of satisfaction of all indebtedness owing by the partnership or by Clarence W. Burr on account of partnership assets (within thirty days after such judgment shall become final), the said Burr shall be held to have no further right, title or interest in or to any of the assets of the partnership; and finally decreed that upon compliance by plaintiffs (the Greenlands) with the provisions of such judgment, title to all the assets of the partnership shall thereafter be owned and held by plaintiffs, Roy Greenland and Betty Jo

Greenland, as their sole property, free and clear of all rights and interest to which the defendant Burr may previously have been entitled by virtue of the previous partnership with plaintiffs. Appellees were also awarded all sums of money realized from the sale of produce from the lands in controversy, and deposited in the registry of the court pursuant to an interlocutory order made by the court in connection with the application of the defendant Burr for an ancillary receivership.

The property which is the subject of this controversy consisted of 171 acres of land, title to which stood in appellant Burr's name; a bank account in Burr's name; some farm equipment owned or furnished by Burr, and other equipment bought out of the Burr bank account. The land was valuable citrus land, and is the principal subject of this controversy.

Appellees first filed a suit in trespass to try title, in which they merely asserted title to an undivided one-half interest in the land. Thereafter, however, they abandoned their original pleadings and alleged a pre-existing oral partnership and a subsequent oral agreement, wherein it is contended that appellant agreed to take back what (the money and property) he had invested and retire from the partnership.

Appellant has based his appeal upon fourteen points of error. Points 1, 2, 3 and 4 are based upon contentions that the trial court erred in decreeing specific performance of the alleged oral agreement of appellant to withdraw from the partnership, because: (1), appellees judicially admitted that the agreement was not the agreement alleged in appellees' pleadings, but was an agreement to convey the interest of appellant in the realty and personalty to the unnamed brothers of appellee Betty Jo Greenland, who were not parties to this suit; (2), the evidence was insufficient to support a jury finding that Burr had agreed to "withdraw from the partnership" and was insufficient to constitute a contract; (3), the agreement described in the jury

finding to the effect that Burr agreed to accept "what he had invested" in the venture is too vague to define the consideration to be paid, since such investment is agreed to have included real estate, choses in action and chattels of appellant; and (4), because the agreement sought to be proved and found by the jury was an agreement to accept "what he had invested", which included properties belonging to him which will not be returned to him by the terms of the judgment, and that the trial court erred in ordering appellant to accept a sum of money in lieu thereof, and in vesting title to the lands and chattels in appellees conditioned upon payment of such sum of money.

The foregoing points each constitute an attack upon the propriety of the trial court's judgment decreeing specific performance of the alleged oral contract, and are so closely related that they may be considered and discussed together.

■ For the purpose of discussing these points, we will assume (without so holding) that the alleged oral contract is not rendered unenforceable by operation of the statute of frauds. The general rule is that a contract must be definite and certain in its terms before its performance will be specifically enforced. The remedy of specific performance is an equitable remedy, and greater certainty respecting the terms and conditions of the contract sought to be enforced is required in equity than at law. Numerous reasons for the rule have been given. One is that, in an action at law (damages for breach), it may be shown that the defendant has not performed the contract—a conclusion that may be arrived at without an exact consideration of the terms of the contract; while in equity it must be shown, not only that the contract has not been performed, but also the nature of the contract which is to be performed. One is a negative, and the other an affirmative, proposition. The affirmative character of an action for specific performance is such as to require the

exact terms of the contract to be ascertained before an affirmative decree purporting to specifically enforce such contract can even be worded. Courts of equity ought not to act on conjecture or impose a term or condition which may be contrary to the intention of the parties, and thereby make and enforce a new contract.

■ In the case at hand, appellees alleged, in substance, that appellant agreed with the Greenlands to withdraw from the partnership if he could get his money back. The jury found that appellant agreed with Roy Greenland to accept "what" he (Burr) had invested and withdraw from the partnership. "What" Burr had invested consisted of money, chattels, real estate and choses in action. The judgment requires appellant to accept a specified sum of money. The sum of money ($40,575.00) specified in the judgment was arrived at on the basis of what the jury found appellant had invested in cash, and in terms of the fair cash market value of the other property. Appellant contends (and there is evidence to support such contention) that his investment was in excess of $71,671.80. Appellees contend that they accepted appellant's offer and agreed to pay Burr what he had invested. In addition to cash, real property and chattels invested by Burr, he also invested a promissory note having a face value of $3,804.70, which was traded in as part of the cash consideration for one of the tracts of land involved in this controversy. The evidence shows that appellant had previously purchased this note for fifty per cent of its face value. It was accepted at its full value in connection with the purchase of the land. Further, there is no showing that appellant agreed to accept in terms of "fair cash market value" what he had invested in chattels and real property in the venture, and there is no way of knowing whether the jury, in arriving at the figure of $40,575.00, considered the value of the note mentioned above on the basis of its face value or on the basis of what appellant himself had paid for it. There is, we believe, considerable differ-

ence between "actual value", which usually need not be defined, and the terms "Market value", "reasonable market value", "fair market value", and "fair cash market value", all of which terms are required to be defined. These matters alone point up the uncertainty inherent in the contract alleged and sought to be specifically enforced.

We next look to the evidence offered by appellees to prove the contract or agreement allegedly made by appellant. The record reflects that appellee Roy Greenland testified several times during the course of the trial concerning appellant's alleged agreement to take his money back and withdraw from the business. He related that in August of 1959, appellant came to the Valley; that he expressed dissatisfaction with the farming operation and with appellee Roy Greenland, and asked Greenland to go for a ride, during which they drove through the fields and looked over the place. The witness quoted appellant as having said:

"Roy, I come down to do something, I want out. It might come a freeze, or anything can happen, and I want out from under these loans and mortgages. I come down to do something about it and I want out."

Later the same day, when they got back to the house, appellee testified that appellant asked him if Jo's (Mrs. Greenland's) brothers, who were visiting the Greenlands at the time, would be interested in taking him out and leaving Greenland in. Greenland told appellant, "I think so, yes. I will ask them." With respect to the terms of the agreement, the witness testified that appellant said, "Just get me my money back. I would just like to get out of it. Just what I got in it." Greenland testified that Burr had never told him what he had invested, and that he himself had no method of ascertaining that fact. He stated that his wife (Mrs. Greenland) kept the books, and he was asked whether the books that his wife kept would show the total

of his (Burr's) investment out there, to which he replied:

"In cash and in terms of what equipment and what property he has in it. But I have never been able to get a figure from him on what he valued the property at, what he put it in at either, or the property or the equipment he sent down here."

The foregoing testimony was elicited from the witness Roy Greenland on direct examination early in the trial. Later, on cross-examination, after appellees had rested their case, appellee Roy Greenland was recalled by appellant, at which time he was again questioned concerning the agreement, as follows:

"Q It is your understanding that he (Burr) was going to sell to your brothers-in-law?

"A Yes, sir, my wife's brothers.

"Q And that was the deal you had, that he would sell to your brother-in-laws?

"A Yes, his interest.

"Q And that was the deal you understood you had with Mr. Burr at that time, that he was going to sell his interest to the brothers?

"A Yes, he said just get him his money back."

The record no-where discloses the identity of the "brothers-in-law" other than that they are brothers of appellee Betty Jo Greenland. They are not identified by name and are not parties to the suit. Uncertainty also exists with respect to the matter of the consideration to be paid. Roy Greenland testified that he did not know how much (money or property) Burr had invested in the venture, and that Burr had never told him. The books maintained by Mrs. Greenland could not be relied upon to establish, with any degree of certainty, the amount invested by Burr, for the reason.

that the books themselves did not show the "value" of the real and personal property put into the venture, or the value of the equipment that he sent down to be used on the property.

■ As a general rule, specific performance will be granted only in cases where there is mutuality of remedy, which means that the right to performance must be mutual. Thus, equity will not compel one party to specifically perform where it cannot compel performance by the other. Ansley Realty Co. v. Pope et al., 105 Tex. 440, 151 S.W. 525; Winston v. Brown, 247 F. 948, 160 C.C.A. 138; 38 Tex.Jur. 460 et seq.

Assuming there was a valid contract, who was to become bound thereby? Appellees did not testify that they themselves had agreed to purchase the interest of Burr in the alleged partnership. The brothers-in-law may or may not have agreed with Greenland that they would purchase such interest; or, alternatively, that they would make the necessary financial arrangements to enable the Greenlands to purchase. The judgment itself decrees specific performance against appellant, but appellees themselves are not bound by the judgment to do anything. They may, if they desire, exercise their right to purchase when and if the judgment in the court below becomes final, within thirty days thereafter, by paying a specified sum into the registry of the court and furnishing proof of the satisfaction of all indebtedness owed by the partnership, or by Mr. Burr on account of partnership assets.

We have concluded that the contract as alleged and proved is too uncertain to warrant specific performance. At most, it is a unilateral agreement not supported by independent consideration. It has not been performed, in whole or in part; and, so far as we can ascertain, imposes no personal obligation upon appellees, but leaves performance thereunder entirely optional with them.

Appellant's points complaining of the error of the trial court in decreeing specific performance of the alleged contract are therefore sustained.

Our holding that the trial court erred in decreeing specific performance of the alleged parol contract discussed above requires a reversal and remand of this case on that issue. It remains for us to determine whether the entire case should be reversed and remanded. In answer to special issues the jury found, and the trial court decreed, that there was a pre-existing partnership.

Appellees plead that a partnership was created with appellant by virtue of an alleged oral agreement, and also plead certain specific terms and conditions that had been agreed upon. These allegations relating to the existence of a partnership were placed in issue by appellant's denial, under oath, of such partnership.

■ The jury findings and the trial court's judgment on the question of partnership are attacked by appellant on various grounds. It is our opinion that the evidence was insufficient to support the jury findings made in answer to Special Issue No. 7, inquiring about the terms of the alleged partnership, and we would sustain appellant's Point No. 8, which attacks such finding on that ground. The jury first found that a partnership was created by an oral agreement; next, it found certain terms and conditions of such partnership. We believe that the evidence was insufficient to support the jury finding that a partnership was created; however, the findings were not attacked upon that ground, but solely upon the basis that there was no partnership as a matter of law because the parties did not jointly and severally assume the liabilities of the venture. We reject this contention. Appellant also complains of the definition of the term "partnership" as given by the court, for the reason that the court failed to include in its definition the requirement that the parties be jointly and severally liable for debts of the enterprise.

■ A "partnership" has been defined as a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions. Texas Elec. Service Co. v. Kinkead, Tex.Civ.App., 84 S.W.2d 567; Continental Fire & Casualty Ins. Corp. v. Drummond, Tex.Civ.App., 220 S.W.2d 922; Eastep v. Travelers Ins. Co., Tex.Civ.App., 235 S.W. 2d 732.

In a case more closely approximating the facts of the case now before us, the San Antonio Court of Civil Appeals, in an opinion by Justice Norvell, also approved the definition set out above. Myers v. Minnick, Tex.Civ.App., 187 S.W.2d 941.

■ In the absence of any contention that the parties are not to share in the losses of a partnership, their obligation to share in such losses will be assumed, where other elements of a partnership are present and an agreement to share in the profits is shown. However, in the instant case there was evidence which reflected that appellant alone was to bear the losses of the alleged partnership, and that he alone was liable for the obligations of such partnership. Appellant objected to the court's definition as given, and submitted a substantially correct definition which, under the facts of this case, we believe the court erred in refusing.

The basic contention of the appellees is that the parties agreed to enter into a partnership whereby they would purchase citrus land in the Rio Grande Valley of Texas and develop it, and after development would sell such property. Appellees alleged that the proceeds from such sale were to be applied first to the payment of any outstanding indebtedness of such partnership; second, to the repayment to the respective parties of any sums invested in the partnership; and finally, the remaining *proceeds* were to be divided between the parties.

■ In the event we are found to be in error in holding that the trial court erred in its definition of the term "partnership", as that term was used in the court's charge, or in holding that the evidence was insufficient to support the jury findings made in answer to Special Issue No. 7, relating to the terms and conditions of the alleged partnership, it is nevertheless our opinion that justice requires a reversal of the entire case, since the issues to be tried are so closely related that the jury, or other trier of facts should, in all fairness, have the entire case before it in reaching a decision to be made on the issues involved. Bayoud v. Nassour, Tex.Civ.App., 319 S. W.2d 794; Rule 434, Texas Rules of Civil Procedure.

Summing up, the testimony of the appellees concerning the alleged partnership agreement was conflicting and there was a variance between such testimony and their pleadings. From the testimony of the parties themselves, it is uncertain whether the parties agreed to an immediate partnership on a 50-50 basis, before the land was purchased, as plead; or whether such partnership was to commence some time in the future in the event they purchased land, and/or after repayment of all debts and advances. Title to all of the assets of the venture was taken in the name of appellant Burr, and only his money and property were used to acquire such assets. While it is true that appellees, during the two and a half years the purported partnership is alleged to have continued, may have (because of personal income tax problems) preferred that title to all assets be kept in the name of appellant, there is no showing that this was done at the request of the appellees. Further, it is undisputed that no partnership returns were filed by the parties during this period, and appellees filed no income tax returns reflecting either a profit or a loss by reason of such operations during such period. All such matters are undisputed, and conflict with the jury finding that the parties were partners. While the evidence may have been sufficient to

establish some form of a profit-sharing agreement, we do not deem it sufficient to establish a parol agreement to create an immediate existing partnership upon the terms found by the jury.

The judgment of the trial court is accordingly reversed, and this cause remanded.